**W. G. DUNCAN COAL CO. v. GLENN,**
**Collector of Internal Revenue.**

No. 2090.

District Court, W. D. Kentucky.

Jan. 25, 1941.

Andrew Duncan, Jr., of Louisville, Ky., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe, Fred J. Neuland, and Courtnay Hamilton, Sp. Assts. to Atty. Gen., and Eli H. Brown, III, U. S. Atty., of Louisville, Ky., for defendant.

MILLER, District Judge.

This action was brought by the W. G. Duncan Coal Company to recover from

the Collector of Internal Revenue at Louisville, Kentucky, the amount of $4,629.47 as income taxes illegally assessed and collected for the taxpayer's fiscal year ending March 31, 1934. The additional tax was paid under protest; claim for refund was properly filed and denied; and this action was thereafter seasonably instituted for its recovery.

The plaintiff, W. G. Duncan Coal Company, hereafter referred to as the coal company, is a Kentucky corporation engaged in mining coal at Greenville, Muhlenberg County, Kentucky. On February 15, 1929, it loaned $50,000 to the Dempster Coal Company, which company executed its notes for this amount to A. W. Duncan and W. G. Duncan, Jr., who took the notes as trustees for the coal company. The notes were secured by a mortgage on all of the equipment of the Dempster Coal Company and a ten year lease of coal property leased by the coal company to the Dempster Coal Company. Only two payments totalling $974.05 were made, one in November, 1929, and one in June, 1930. On or about January 22, 1932, a contract was entered into between the Dempster Coal Company and Dempster Mining Company by which the mining company assumed and agreed to pay all sums owed by the Dempster Coal Company to the trustees under the mortgage. On December 21, 1932, the trustees filed suit against the Dempster Coal Company and the Dempster Mining Company in the Muhlenberg Circuit Court to foreclose their lien. This suit was instituted pursuant to an agreement entered into between counsel for the respective parties whereby it was agreed that the defendant debtors would consent to a judgment. On January 11, 1933, judgment was entered in favor of the trustees in the sum of $49,025.94 with interest, and the Master Commissioner of the Muhlenberg Circuit Court was ordered to sell the property securing the indebtedness in satisfaction of the judgment. On February 27, 1933, the Master Commissioner sold the property at a courthouse sale, at which A. W. Duncan and W. G. Duncan, Jr., became the purchasers at their bid price of $10,001, which represented the highest bid. The Commissioner filed his report of sale on April 18, 1933, and an order confirming the report of sale was entered on April 25, 1933. On April 26, 1933, the purchasers filed a written assignment of their bid to the coal company and on that date the Master Commissioner deeded the property to the coal company.

The coal company has at all times filed its income tax returns and kept its books on a fiscal year basis ending March 31st. The purchase price of $10,001 was credited on the judgment. No further payments were made on the judgment, and on March 31, 1934, the Coal Company charged off on its books as a bad debt the unpaid balance in the amount of $39,024.95. In its income tax return for the fiscal year ending March 31, 1934, it claimed this amount as a deduction. No tax liability was shown on this return. The Commissioner of Internal Revenue ruled that the deduction should have been taken for the fiscal year ending March 31, 1933, in that the debt became worthless and was so ascertained by the coal company prior to April 1st, 1933. The specific contention of the Government is that the unpaid portion of the debt became worthless and was so ascertained by the taxpayer on February 27, 1933, when the security was sold by the Commissioner for the sum of $10,001 to A. W. Duncan and W. G. Duncan, Jr., pursuant to the judgment of January 26, 1933. In July, 1936, the Commissioner of Internal Revenue made a deficiency income tax assessment for the fiscal year ending March 31, 1934, in the amount of $4,096.93, which amount was subsequently paid under protest by the coal company together with $532.54 interest.

■ The case is governed by the provisions of the Revenue Act of 1932. Section 23(j) of that Act, 26 U.S.C.A.Int.Rev. Acts, page 490, provides that in computing net income there shall be allowed as deductions "Debts ascertained to be worthless and charged off within the taxable year." This provision is the same as that contained in revenue acts for other years and has received considerable judicial interpretation. The general rule flowing from that statutory provision is well stated in the opinion in Sabath v. Commissioner, 7 Cir., 100 F.2d 569, 571, as follows:

"The language of the statute justifying charging off a bad debt is that it shall be deducted when ascertained to be worthless. Congress failed to state by whom it must be ascertained to be worthless and, in view of the liberality extended to taxpayers in construing revenue laws, must have intended that the person making the return might exercise his discretion, provid-

ed he do so fairly and honestly. The statute of limitations itself does not necessarily determine the worthlessness of a debt, for it may be renewed by a subsequent promise. * * * The statute contemplates a situation with which the taxpayer is confronted and certainly he is made in the first instance, judge of the worthless character of the debt and when he in good faith believes that the legal situation is such, considering all the surrounding and attendant circumstances, that there is no reasonable hope of probability of recovery, he is justified in treating the debt as worthless. Motter v. Smyth, 10 Cir., 77 F.2d 77. The real question which confronts us is not when did the debt become worthless but when did the debtor ascertain it to be worthless. Jones v. Commissioner, 7 Cir., 38 F.2d 550."

See also Duffin v. Lucas, Collector, 6 Cir., 55 F.2d 786, at page 795; Moore v. Commissioner, 2 Cir., 101 F.2d 704; Commissioner v. MacDonald Engineering Company, 7 Cir., 102 F.2d 942.

As was pointed out in the Moore case, supra, that because of changing factual basis, no hard and fast rule can be laid down for the solution of tax problems, but each case must be decided on its own facts. The first question is whether or not the taxpayer did in fact ascertain a debt to be worthless in the year for which the deduction is sought; then, whether the taxpayer acted in good faith. That opinion pointed out that "good faith demands that 'A taxpayer should not be permitted to close his eyes to the obvious, and to carry accounts on his books as good when in fact they were worthless. * * * This would defeat the intent and purpose of the law.' As long as it sufficiently appears that the taxpayer did not act with a view to 'defeat the intent and purpose' of the tax law, the good faith requirement is satisfied." [101 F.2d 706.] Accordingly, it has been held in a number of cases that although it becomes evident that a debt will not be collected in full and the probabilities are that it may not be collected at all, yet as long as there is any reasonable possibility of any recovery the taxpayer is justified in continuing to carry the account on his books. The taxpayer is not required as a matter of law to abandon hope of collecting a portion of the debt if acting in good faith as a reasonably prudent business man he feels there is a possibility of some recovery. Under those conditions, even

though the debt may be worthless as proven by subsequent events, yet it has not been ascertained by the taxpayer to be worthless while he is still continuing to carry it as an asset. In this connection we must keep in mind that the situation is not the same as the one dealing with a deduction by reason of losses, in that in the case of a deduction by reason of a loss, the statute merely provides that such loss must be "sustained during the taxable year and not compensated for by insurance or otherwise." Revenue Act 1932, § 23 (f), 26 U.S.C.A. Int. Rev.Acts, page 490. This has been held to be fixed by an identifiable event, being the exact time when the loss actually occurred, which is a very different matter from the ascertainment on the part of the taxpayer that a debt has become worthless at a prior time. See United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L. Ed. 1120; Commissioner v. MacDonald Engineering Co., supra. In each of the cases of Sabath v. Commissioner, supra, Moore v. Commissioner, supra, and Commissioner v. MacDonald Engineering Co., supra, the Court allowed a deduction for income tax purposes on account of a worthless debt for the tax year in which the taxpayer finally gave up hope of collecting it and so charged it off, although the evidence showed that the debt had actually become worthless during a preceding year.

In the present case it was evident prior to March 31, 1933, that the loan would not be repaid without legal proceedings, that the only payment which would be received would be the net proceeds from a judicial sale of the mortgaged property, and that these net proceeds would not pay the debt in full. But this did not mean that the debt was worthless; on the contrary it meant that part of the debt was worthless and part of the debt would be paid. Accordingly there existed not only a possibility of a recovery but practically an assurance of a substantial recovery. This was the situation when the foreclosure suit was filed in the Muhlenberg Circuit Court, and even though it was a friendly suit for the purpose of liquidating the security speedily and in an orderly manner it did not change the legal aspects of the result which would follow. Under the existing decisions it was not permissible for the taxpayer to have charged off the debt as worthless when the suit was filed, on December 21, 1932, or even on January 26, 1933, when the judgment was en-

tered directing a sale of the mortgaged property. The debt was still collectible in part and would continue to be collectible in part until the assets of the debtor had been exhausted by appropriation to the satisfaction of the judgment. Those assets were not so exhausted until they were sold under the judgment and title passed to the purchaser. When that happened, and there were no further assets available, the unpaid portion of the debt became worthless. Accordingly, the question for decision is when did the sale take effect and title to the debtor's property pass to the purchaser. The defendant's contention that this occurred on February 27, 1933, when the property was sold at the courthouse door ignores the Kentucky law on the subject which is applicable to this case. It is well settled under the decisions of the Kentucky Court of Appeals that a judicial sale of land must be confirmed by an order of the Court decreeing the sale in order to devest the title out of the former owner and pass a good title to the purchaser by virtue of the Commissioner's deed thereafter. Until the sale is confirmed the bid accepted by the Commissioner is considered as the best offer obtainable by the Commissioner in offering the property for sale as an arm of the Court, and such offer is not accepted and does not become a binding contract for the purchase of the land until it is confirmed by order of the Court. Busey v. Hardin, 41 Ky. 407, 2 B.Mon. 407; Taylor v. Gilpin, 60 Ky. 544, 3 Metc. 544; Egard v. Chearnley, 64 Ky. 12, 1 Bush 12; Hazard Lumber & Supply Co. v. Horn, 228 Ky. 554, 15 S.W.2d 492. In each of those cases the Commissioner's sale was not confirmed by an order of Court and the Court held that title did not pass to the purchaser accepted by the Commissioner. Those cases and numerous others in Kentucky show that exceptions can be filed to the Commissioner's report of sale based on various grounds, such as gross inadequacy of the purchase price, defective title, defects or irregularities in the judgment ordering the sale, irregularities or misconduct affecting the sale, fraud on the part of those participating in the sale, and mistake, surprise or accidents which prevent a fair and proper sale, and that in many instances such exceptions are sustained and the sale set aside, resulting in no passing of title to the would-be purchaser, and the holding of a later sale passing title to a different purchaser and at a different and often larger purchase price. In the present case the sale had not been confirmed by order of court on March 31, 1933, and accordingly the debtor was still the legal owner of the property at that time. It was not until April 25, 1933, that the report of sale was confirmed by order of court, the bid became binding on the purchasers and title passed out of the debtor company. Until that time there was no legal certainty that the purchasers would be the ultimate purchaser, or that the bid price of $10,001 would become the actual purchase price, or how much of the debt, then reduced to a judgment, would be paid and how much would be worthless. It logically follows that so much of the debt as ultimately became worthless was not definitely ascertained by the taxpayer or by anyone else until April 25, 1933. We see nothing in the way in which the debt was handled or in the foreclosure proceedings in the State Court to challenge the good faith requirement on the part of the taxpayer.

The defendant relies strongly upon the case of Little v. Helvering, Commissioner, 8 Cir., 75 F.2d 436, 439. In that case the taxpayer foreclosed against mortgaged property and sold the same under the court's judgment on July 25, 1923. The property was bought in by the trustees and the purchase price was credited against the judgment. After the foreclosure the debtor company had no funds or property of any kind except its equity of redemption in the real estate. In 1924 the taxpayer resold the property to a newly organized corporation and at that time computed his loss by deducting the amount received from the amount of the debt. He claimed this loss as a deduction for the taxable year of 1924. The Board of Tax Appeals disallowed the deduction which ruling the Circuit Court of Appeals affirmed. The Court held that the loss occurred and the unpaid portion of the debt became worthless at the time of the foreclosure sale in July, 1923. The defendant stresses the language of the opinion in several places wherein it is stated that the debt was ascertained to be worthless in 1923 "at the time of the foreclosure sale." However, in that case evidently the foreclosure sale and the order of confirmation, if any was required under the State Court practice in North Dakota, both occurred in the taxable year 1923 and it made no difference whether the loss was ascertained on the day of the sale or on the day when the sale

was confirmed. The question which is at issue in the present case is not even discussed in that opinion. The general expression "foreclosure sale" as used in that opinion evidently means the foreclosure sale as legally completed without it being necessary to draw any distinction between the date of the sale and the date of its confirmation. The other authorities referred to by the defendant sustain general principles of law which are not in dispute in this case, particularly the ruling that a loss, deductible for income tax purposes, takes place upon the happening of an identifiable event, which makes the transaction a closed and completed one in the year which it was deducted. Spring City Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200; Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010. These rulings support the plaintiff's contention rather than weaken it, in that the identifiable event required to make the sale a closed and completed transaction is the order of confirmation required by the Kentucky law which did not occur until during taxable year ending March 31, 1934.

Judgment to be entered for the plaintiff according to the prayer of its petition. Counsel will prepare and submit for approval and entry findings of fact and conclusions of law consistent with the views expressed in this opinion.