## BARNES v. GLENN, Collector of Internal Revenue.

### No. 650.

District Court, W. D. Kentucky, at Louisville.

June 16, 1944.

James P. Miller, of Louisville, Ky., for plaintiff.

286

Eli H. Brown, III, U. S. Atty., of Louisville, Ky., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Richard N. Ivins, Sp. Assts. to Atty. Gen., for defendant.

MILLER, District Judge.

The plaintiff, H. G. Barnes, brought this action to recover $267.88 which he paid under a deficiency income tax assessment for the calendar year 1938. The plaintiff claims that the Commissioner was in error in refusing to allow certain losses and bad debts claimed as deduction by the taxpayer for the year in question.

### Facts.

H. G. Barnes, the plaintiff taxpayer, has for some years been a resident of Louisville, Kentucky, and President of the Bridge Transit Company which operates a bus line over the Municipal Bridge between Louisville and Jeffersonville, Indiana. The defendant, Seldon R. Glenn, is and was during the year 1938 Collector of Internal Revenue for the District of Kentucky.

Beckham Eads, a brother-in-law of the plaintiff, lived in Lexington, Kentucky, and had been employed in that city for some ten or twelve years prior to 1933 by Goodwin Brothers, one of the large dealers in new and secondhand automobiles in that city. In the latter part of 1932 the plaintiff, thinking that Eads was a good automobile man and was not making the salary that he deserved, decided to start an automobile business in Lexington with Eads in charge. Accordingly, he organized a Kentucky corporation with an authorized capital of $10,000, consisting of 100 shares of the par value of $100 each, all of which was subscribed by the taxpayer. 87 shares of this stock were issued in his name while the remaining 13 shares were issued 10 in the name of Beckham Eads and 3 in the name of Miss Lillian Warren, the bookkeeper. Eads was made president with the taxpayer acting as vice president and with Miss Warren as secretary and treasurer. The company was originally a used-car company with the major portion of its business in that line, but later the handling of new cars was added.

In addition to the capital stock subscribed for by the plaintiff, the plaintiff also loaned to the company the sum of $23,000 on unsecured notes on the following dates and in the following amounts:

| | |
|---|---|
| April 11, 1933 | $4,000 |
| October 4, 1933 | 5,000 |
| October 30, 1934 | 6,000 |
| March 9, 1935 | 5,000 |
| August 1, 1935 | 3,000 |

The plaintiff knew practically nothing about the automobile business and gave no supervision to the operation of the company, but expected Eads, his brother-in-law, to run it. He saw Eads every few months and at said times discussed generally with him the business affairs of the company. For a while he received financial statements once a month, and then possibly one or more annual statements. The company stopped sending financial statements to him about the latter part of 1937. He received a dividend of $600 in 1935 which was the last dividend paid. The last payment of interest which he received on the $23,000 loan to the company was in 1936.

The income and excess profits tax return of the corporation for the year 1935 showed a loss of $13,984.70 and liabilities in excess of $40,000 as of the close of the year. The return for the year 1936 showed a loss of $17,958.54 and liabilities in excess of $33,000 at the close of that year. These returns were based on book records kept by Lillian Warren, the bookkeeper, and were signed by her and by Eads. Miss Lillian Warren acted as bookkeeper for the company from its beginning in 1932 until September 1937 at which time she resigned and took a better position with another company, but continued to help with the books at the motor company by working there at nights and on Sundays after she left. When she left in September 1937 the company had used cars. The business had been better in 1936 than it was in 1937. During January 1938 the company made eight sales of used cars. During February 1938 the company made four sales of used cars. During the calendar year 1938 the company issued 45 of its checks in the course of its business. The company discontinued business in March 1938. In the final liquidation and dissolution that followed all creditors were paid with the exception of the plaintiff who received nothing on his loan of $23,000 and nothing on his stock investment. The company did not go into bankruptcy or receivership.

The taxpayer went to Florida on a vacation trip in the early part of 1938. While there he received a letter from the Nation-

al Bond and Investment Company, which had financed some of the cars handled by the company, requesting the taxpayer to put up more money to take care of some more cars that they had floor-planned. The taxpayer returned to Kentucky about March 1, 1938 and immediately investigated the situation and found that the company was practically broke, holding a lot of assets on their books that were uncollectible as the result of a bad credit system used by the company. In the latter part of March 1938 the National Bond and Investment Company removed from the place of business their cars which had been floor-planned. The taxpayer knew before 1938 that the company was losing money, but prior to going to Florida in January 1938 did not believe that the company was insolvent or would not be able to operate at a profit later. Until he returned to Kentucky in March 1938 he was of the belief that the accounts receivable carried on the books of the company as assets were actually collectible and did not ascertain their uncollectibility and the insolvency of the company until his investigation of the situation in March of 1938.

The taxpayer had no taxable income for the year 1937. His income for 1938 was reduced to a nontaxable status by claiming loans to and capital stock of the Eads Motor Company as a loss in that year. The Commissioner disallowed the deductions and made a deficiency assessment, which the taxpayer paid in the amount of $267.88. Claim for refund was denied and this action timely brought.

### The Law.

Section 23 of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1011, which controls the deductions which the taxpayer was permitted to take in his income tax for the calendar year of 1938 provides as follows:

"In computing net income there shall be allowed as deductions:

\* \* \* \* \*

"(e) Losses by individuals.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or

\* \* \* \* \*

"(g) Capital losses.

"(1) Limitation.—Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117.

"(2) Securities becoming worthless.—If any securities (as defined in paragraph (3) of this subsection) become worthless during the taxable year and are capital assets, the loss resulting therefrom shall, for the purposes of this title, be ,considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets.

"(3) Definition of securities.—As used in this subsection the term 'securities' means (A) shares of stock in a corporation.

\* \* \* \* \*

"(k) Bad debts.

"(1) General rule.—Debts ascertained to be worthless and charged off within the taxable year \* \* \*.

"(2) Securities becoming worthless.—If any securities \* \* \* are ascertained to be worthless and charged off within the taxable year and are capital assets, the loss resulting therefrom shall \* \* \* be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets. \* \* \*"

"Losses are deductible from income for those years only in which the losses are sustained. In order that a loss arising from investment in the capital stock of a corporation may be regarded as 'sustained' in any given year, it is ordinarily necessary either that there be a final disposition of the investment, as by sale or exchange, or that there be some 'identifiable event' by which the loss is otherwise clearly evidenced." Gowen v. Commissioner of Internal Revenue, 6 Cir., 65 F.2d 923, 924; United States v. S. S. White Dental Manufacturing Company, 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120.

"The taxpayer cannot be an 'incorrigible optimist' in postponing the time for claiming a deduction based on the worthlessness of stock. \* \* \* Nor can he postpone the date in a manner which amounts to a manipulation of his deductions to suit his income. \* \* \* In general the taxpayer may, and must, claim his deduction in the year in which events are such as to furnish convincing evidence that the stock has in fact become worthless in that year. One form of effective evidence, though not necessarily conclusive is the existence of an authoritative balance sheet showing whether assets exceed liabilities so as to leave any equity for the stock." The

identifiable event necessary to evidence such a loss exists when the assets of a business are depreciated to exhaustion. Mahler v. Commissioner of Internal Revenue, 2 Cir., 119 F.2d 869, 872; Industrial Rayon Corp. v. Commissioner of Internal Revenue, 6 Cir., 94 F.2d 383, 384; Gowen v. Commissioner of Internal Revenue, 6 Cir., supra.

The statute makes a distinction between the deduction of "losses" under Section 23(e) and (f) and of "bad debts" under Section 23(k). Losses must be deducted in the year in which they are sustained and if the taxpayer fails to learn of them in time, he loses the deduction which he otherwise would have. On the other hand, debts must be deducted in the year in which the taxpayer ascertains them to be worthless. Although some courts have at times charged the taxpayer with the duty of selecting that year in which a prudent person with the same information would have concluded that the debt was uncollectible, yet the proper construction of the statute is that the proper year is the year in which the taxpayer actually ascertains the fact of worthlessness, no matter how much earlier a reasonably prudent person would have done so. A taxpayer is not charged with the duty of ascertaining the worthlessness of a bad debt at any time before he actually does so. Rosenthal v. Helvering, 2 Cir., 124 F.2d 474, 476, and cases, therein referred to; W. G. Duncan Coal Company v. Glenn, D.C.W.D.Ky., 36 F. Supp. 834, 835, 836.

The stock of the Eads Motor Company owned by the taxpayer became worthless without any reasonable hope of recovery prior to the year 1938 and it became a deductible loss for income tax purposes prior to the year 1938. It was not a proper deduction for the year 1938. The loan by the taxpayer of $23,000 to the Eads Motor Company was not ascertained by the taxpayer to be worthless until the year 1938. Although a careful analysis of the financial statements of the company and of the accounts receivable would have disclosed the insolvent condition of the corporation and the probability of the substantial loss to the lender, yet (1) this did not necessarily mean that the loan was entirely worthless, and (2) the taxpayer herein involved made no such analysis and had no such detailed information about the uncollectibility of the accounts receivable. A debt which cannot be collected in full but which can be collected in part is not a worthless debt. Even though the stock of the corporation had become worthless, this did not necessarily mean that the creditors would not receive some payment on their claims. As a matter of fact, the $23,000 debt was never actually worthless, even though the plaintiff received nothing in payment thereof. In the final liquidation of the company all other creditors were paid in full, and if the plaintiff had availed himself of his legal rights at the time he could have shared ratably with the other creditors in the final distribution of the company's assets. As a strict matter of law the debt did not become worthless until the plaintiff waived this right and permitted the other creditors to be paid in full, which happened in 1938. The loss claimed by the taxpayer on this item for the calendar year of 1938 was properly claimed and the refusal of the Commissioner to allow it was erroneous.

The taxpayer is entitled to a recovery for the amount shown to be due by a recomputation of the 1938 tax allowing the $23,000 deduction claimed but disallowing the $5,000 deduction for capital loss. Counsel for plaintiff and defendant will make this computation and plaintiff can tender the proper judgment based thereon for entry.