### In re HOFFMAN. *
### No. 17959.

District Court, E. D. Pennsylvania.
April 27, 1936.

James J. O'Brien, of Philadelphia, Pa., for trustee.

Charles D. McAvoy, U. S. Atty., of Philadelphia, Pa., for collector.

KIRKPATRICK, District Judge.

A petition in bankruptcy was filed against Lewis B. Hoffman on June 7, 1934, and an adjudication followed. Although he had been in business for a number of years, he had never filed an income tax return, and the collector of internal revenue made assessments and presented tax claims before the referee amounting with penalties to $11,892.73, covering the years 1926 to 1930, inclusive, and 1932 and 1933. Without the penalties, which it is conceded are not collectible (Bankruptcy Act § 57j, 11 U. S.C.A. § 93 (j), the amount claimed is $8,611.86 with interest.

The referee proceeded under authority of section 64a of the Bankruptcy Act, as amended, 11 U.S.C.A. § 104 (a), to determine the amount of tax legally due, reduced the liability for the year 1932 from $3,449.54 claimed to $89.33, reduced the liability for 1933 from $1,496.01 to nothing, and allowed the collector's claim for the balance, or $3,765.64. Two distinct questions were involved in the referee's rulings. First, as to the 1932 tax, the referee found that the bankrupt sustained a loss of $24,500 during that year by reason of the insolvency of the Franklin Trust Company, of the stock of which institution the bankrupt owns four hundred shares. The collector contended that the loss was sustained in the year 1931. Second, for the year 1933, the referee allowed a deduction

*Decree affirmed Yocum v. Rothensies, — F.(2d) —.

of $22,569.05 for bad debts. The collector admitted that these bad debts had been ascertained to be worthless in that year, but contended that they had not been charged off on the books of the bankrupt and therefore were not deductible. The referee agreed that the deduction would not have been available to the taxpayer himself, but nevertheless allowed it under the general power vested in the court by section 64a of the Bankruptcy Act to ascertain the amount of taxes legally due and owing, holding that the trustee in bankruptcy was not affected by the bankrupt taxpayer's failure to charge off the debts ·during the year for which they were claimed as deductions.

I. As to the Franklin Trust Company loss the referee's findings are as follows: "The Franklin Trust Co. closed its doors on October 1, 1931, on an order of the State Banking Department, not because of insolvency but because it was deemed unsafe to be permitted to continue in business. Liquidation of the Bank's assets was ordered on December 31, 1931. The inventory and appraisement of the bank's assets, which was filed June 20, 1932, showed book values of $38,828,146.43, with liabilities of $16,118,514.36. The liquidation value of the book assets as shown in the inventory and appraisement was $19,236,439.74. The bank had paid a dividend to its stockholders on October 1, 1931, shortly before it was closed. The Government refused to allow depositors of this bank to deduct their deposit losses until 1932." It also appears that in June, 1932, an appraisement was made by official appraisers which fixed the liquidation value of the assets of the bank as of that date at a figure far below the assets and conclusively established insolvency. Distributions were made to depositors thereafter, but none has been or ever will be made to stockholders.

The question is whether the fact that a bank is closed by the authorities (without a finding of insolvency) and liquidation ordered in a given year establishes the worthlessness of the stock as of that year.

What was said by Judge Dawson in Wesch v. Helburn (D.C.) 5 F.Supp. 581, is applicable to this situation:

"Taxation is eminently a practical matter, and a reasonable and practical construction should be given to section 23 (e). In Lucas v. American Code Company, 280 U.S. 445, 50 S.Ct. 202, 203, 74 L.Ed. 538 [67 A.L.R. 1010], it is declared: 'The general requirement that losses be deducted in the year in which they are sustained calls ·for a practical, not a legal, test.'

"In discussing a similar provision of the 1918 act, the Supreme Court of the United States, in the case of United States v. S. S. White Dental Manufacturing Company, 274 U.S. 398, 47 S.Ct. 598, 600, 71 L. Ed. 1120, used this language: 'The statute obviously does not contemplate and the regulations (article 144) forbid the deduction of losses resulting from the mere fluctuation in value of property owned by the taxpayer. * * * But with equal certainty they do contemplate the deduction from gross income of losses, which are fixed by identifiable events.'"

To say that stockholders of a bank which has been closed by order of the authorities and ordered liquidated do not sustain a loss upon their stock until some subsequent date when liquidation finally takes place, or until the official appraisement of the bank's assets, seems to me to be losing touch with reality. It is just conceivable that cases might arise in which some realization could be had by the stockholders in the long future. As a practical matter, however, the business world never remotely considers that contingency. To all intents and purposes the stock of a bank becomes unsalable at any price when the bank is taken over and liquidation begins.

The government's position that the loss occurred in the year in which the bank was closed is in accordance with the general practice of the Department. There is no formal regulation, and it would not be controlling if there were, but it is certainly a sensible, practical rule and in accordance with actual facts. I therefore hold that the bankrupt's loss in the Franklin Trust Company stock was sustained in the year 1931 and not in the year 1932.

II. As to the bad debt claim: Early in 1934 Hoffman got into financial difficulties and attempted to negotiate with his creditors. Accountants were employed to investigate his financial condition. The accountant turned up, among other things, a list of debts amounting to $22,569.05, which, without going into details, had undoubtedly been ascertained to be worthless by the bankrupt during the year 1933. They had not, however, been charged off on his books. The bankrupt probably did not want to reduce his net worth for credit

purposes. The accountant physically charged off the debts upon the bankrupt's books some time in 1934—the trustee says about March 15, but as I read the testimony the accountant said "in June of 1934, April or May." However, it is not particularly important. The fact is that the bankrupt did not charge them off in 1933.

I agree that a reasonable time after the close of the taxable year may be allowed for the charge-off, but in this case the bankrupt plainly did not intend to charge the debts off in 1933, but meant to carry them on his books as good for an indefinite time. It was not a case of mere careless failure to put himself in a position to claim a deduction. It was his will and purpose that these accounts should be treated in his business accounting as live accounts.

The referee so held, but felt that the creditors through the trustee were entitled to make the charge-off and claim the deduction. I do not think that the decisions cited by the referee establish this right. It is, of course, well settled that creditors will not be prejudiced by the bankrupt's failure to take steps to protect his estate against tax liability when such failure is due to deliberate fraud upon his part. Or it may be that they will not be prejudiced by the negligence of the bankrupt, where the negligence consists in failing to comply with certain regulations or to do certain things required by the law in order to avoid penalties and liability. These cases, however, do not control the present one. The requirement that the debts be charged off within the taxable year is part of the statutory description of the kind of debts which may be deducted. The charge-off is of the essence of the deduction. The taxpayer may, if he chooses, bring worthless debts within the class deductible, or he may not, but without his affirmative act they will not come within that class. If, for reasons of his own, he fails to act, the result simply is that there is no deductible debt. This is quite different from a case in which he has a perfectly legal deduction and negligently or fraudulently fails to avail himself of it.

The conclusion is that, where the taxpayer has intentionally refrained from charging off within the taxable year debts ascertained to be worthless, his trustee in bankruptcy cannot claim a deduction for such debts, in spite of the fact that a charge-off was made by an accountant act-

ing for taxpayer's creditors three months or more after the close of the taxable year.

The order of the referee is reversed, and the claim of the collector allowed in the amount of $8,611.86, with interest.