**GIMBEL v. ROTHENSIES, Collector of Internal Revenue.**

No. 19904.

District Court, E. D. Pennsylvania.

July 21, 1938.

Albert S. Lisenby and Weill, Nesbit & Lisenby, all of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., Andrew D. Sharpe and W. Croft Jennings, Sp. Assts. to Atty. Gen., and James W. Morris, Asst. Atty. Gen., for defendant.

MARIS, Circuit Judge.

This is a suit by Daniel Gimbel, a resident of Philadelphia, against the Collector of Internal Revenue for the First District of Pennsylvania to recover certain income taxes alleged to have been erroneously paid for the years 1929, 1930 and 1931. A jury trial was waived by agreement. The plaintiff's claim is based upon the alleged erroneous disallowance of a loss which he claims to have sustained in one or another of those years by reason of certain preferred and common stock of the Atlantic Mercantile Company, Inc., which he owned, having become worthless. From the evidence I make the following

Special Findings of Fact

The Atlantic Mercantile Company, Inc., hereinafter referred to as the "Company," was incorporated by the plaintiff and other members of his family in 1923. On March 9th of that year he purchased 4,800 shares of preferred stock of the Company for $480,000 and 4,800 shares of its common stock for $24,000. On November 1, 1929, pursuant to a resolution of August 28, 1929, one-half of the preferred stock of the Company was retired, and on such retirement the plaintiff received $240,000 for 2,400 shares of its preferred stock.

After the retirement of one-half of its preferred stock on November 1, 1929 the Company had outstanding 20,050 shares of

common stock of a stated value of $5 per share and 10,025 shares of preferred stock of a par value òf $100 per share. After November 1, 1929 and throughout the years 1930 and 1931 the plaintiff owned 2,400 shares of preferred stock of the Company which had cost him $240,000 and 4,800 shares of its common stock which had cost him $24,000.

Neither the preferred or common shares of the Company were ever listed or traded in on any stock exchange and no sales of any of these shares occurred during the years here involved. The Company was engaged in the business of investing in securities and by the end of the year 1929 all of its securities were pledged with banks as collateral security for loans.

On August 31, 1929 the Company, on the basis of the market value of its investments, had a surplus of $1,505,644.16. On that basis its preferred stock had a value of $100 per share and its common stock of $79.89 per share. A serious decline in security values, affecting the securities owned by the Company, commenced in October, 1929, and continued through the years 1930 and 1931. As a result on December 31, 1929 the Company's surplus had been wiped out and the value of its capital stock reduced to the sum of $871,760, which was substantially less than the par value of the outstanding preferred shares. During the year 1930 the continuing decline in security values completely wiped out the capital of the Company and it became insolvent. On December 31, 1930 the excess of its liabilities over the fair market value of its assets was $472,337.99. The decline continued and on December 31, 1931 the Company had become insolvent to the extent of $1,031,-583.82.

In October, 1930 the Company was called upon to supply additional collateral in connection with its bank loans. This it was unable to do and the plaintiff and two of his brothers who were stockholders each personally guaranteed $100,000 of the Company's indebtedness to the banks. This guarantee they were subsequently required to pay. Also during the year 1930, in order to provide the Company with additional collateral, the plaintiff and his two brothers each loaned it 7,000 shares of common stock of Gimbel Brothers, which shares were in turn pledged by the Company with the banks.

In February, 1931 the plaintiff and his brothers each endorsed notes of the Company in the principal sum of $66,666.66 which were given by the Company in settlement of litigation against it. Toward the close of the year 1931 the plaintiff and his brother were asked to give further guarantees to the banks or to loan additional collateral but they refused to do so.

About that time the banks indicated to the Company that when they could liquidate the collateral and pay off the Company's obligations they would do so. The Company's obligations to the banks were ultimately discharged with the exception of approximately $500,000, still due to one bank. In addition the Company owes the plaintiff the amounts paid by him as guarantor and endorser and the shares of stock which he loaned it. It now has no assets except 700 of the shares of common stock of Gimbel Brothers loaned it by the plaintiff and his brothers.

From the foregoing evidentiary facts I find the ultimate fact to be that the plaintiff's investment in the preferred and common stock of the Company, amounting in all to $264,000, became worthless in the year 1930.

The plaintiff keeps no books of account. He filed his income tax returns on a cash receipts and disbursements basis for the years 1929, 1930 and 1931 with the Collector of Internal Revenue for the First District of Pennsylvania. In these returns he made no claim for a loss on account of his preferred or common stock of the Company. Upon an audit of these returns the Commissioner of Internal Revenue determined and assessed against the plaintiff additional taxes for each year, which he paid on May 7, 1935.

On May 20, 1936 he filed with the Collector claims for the refund of additional taxes so paid for each of the three years. The claims were based on the ground that he should have been allowed in one or another of those years a deduction of $24,000 on account of the loss sustained by him by reason of his common stock in the Company having become worthless and a deduction of $240,000 on account of the loss sustained by him by reason of his preferred stock in the Company having become worthless. These claims were rejected by the Commissioner on September 16, 1936, whereupon the plaintiff brought the present suit.

Additional facts which may be material appear in the stipulation filed by the parties which is incorporated herein by reference.

## Discussion

This suit is determined by my finding of fact that the plaintiff's investment in the preferred and common stock of the Atlantic Mercantile Company became worthless in 1930. In reaching this determination I have borne in mind the rule that a loss arising from an investment in the stock of a corporation may be regarded as sustained only in the year in which there occurs some identifiable event by which the loss is clearly evidenced. Gowen v. Commissioner, 6 Cir., 65 F.2d 923.

In my opinion the insolvency of a corporation is such an event, particularly where the insolvency follows the pledge of all the free assets of the corporation so that it is unable to meet any of its unsecured obligations. See Industrial Rayon Corp. v. Commissioner, 6 Cir., 94 F.2d 383. In the present case the Company was hopelessly insolvent throughout the year 1931. At the end of that year its insolvency exceeded one million dollars. It would be "losing touch with reality," as Judge Kirkpatrick said in Re Hoffman, D. C., 16 F.Supp. 391, 392, seriously to deny that its stock was worthless prior to that year.

The Company first became insolvent in 1930 and I think the conclusion inescapable that it was in that year that its stock became worthless and the plaintiff's investment therein a total loss. The loss did not occur in 1929 since the Company was still solvent at the end of that year even though its capital was much impaired. I do not feel that the hope of the plaintiff to salvage something of his investment, which was evidenced by his various actions in assisting the Company in 1930 and early 1931, can overcome the other facts, so as to postpone his loss until 1931. It was clear enough at the end of the year 1930 that the Company was hopelessly insolvent and its capital stock was of no value whatever. I accordingly reach the following

## Conclusions of Law

In computing his net income for the calendar year 1930 plaintiff is entitled to a deduction of $264,000 on account of the loss sustained by him by reason of his preferred and common stock in the Atlantic Mercantile Company having become worthless in that year.

The plaintiff is not entitled to that deduction or any part of it for the calendar years 1929 or 1931.

The plaintiff is entitled to the refund of income tax and interest paid by him for the year 1930.

The plaintiff is not entitled to the refund of income tax or interest paid by him for the years 1929 and 1931.

I accordingly find in favor of the plaintiff in an amount to be assessed in accordance with this opinion.