### HARRIS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 81.

Circuit Court of Appeals, Second Circuit.

Feb. 9, 1944.

Samuel Greenberg, of New York City, for petitioner-appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Irving I. Axelrod, Sp. Assts. to Atty. Gen., for respondent-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The petitioner took a deduction in his income tax return for 1936 for a bad debt determined to be worthless and charged off in that year, and claimed deductible under the provisions of § 23(k) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 828. The commissioner disallowed it and determined a deficiency. The tax court upheld this determination upon finding that "the petitioner must have known long prior to 1936 that his debt was worthless." This petition to review the redetermination of the deficiency presents two principal questions, which are (1) whether the tax court found that the petitioner had in fact ascertained the debt to be worthless before 1936 and (2), if not, whether he is to be charged with the consequences of having done so if a reasonable man in like circumstances would have known that it was worthless before the year in which the deduction was claimed.

It appeared that the petitioner organized the Leofrancony Realty Corporation in 1923 to buy and sell real estate. He invested $500 in its capital stock and was the only person who had any "real interest" in it before 1929. In 1927 that corporation bought an apartment building at 2027 Bathgate Ave., Bronx, N. Y., for about $128,000. The property was then encumbered by a first mortgage of $65,000 due May 2, 1932, which bore interest at 5½ per cent payable semiannually. The corporation took the property subject to that mortgage, which it as-

sumed, gave the seller a second mortgage on the premises for $41,000, and paid the remaining $19,554.17 of the purchase price in cash which it borrowed from the petitioner. In consideration for this loan, it gave the petitioner its note for $24,000 dated May 2, 1927, due in ten years with interest payable monthly at six per cent and secured by a third mortgage on the property. The petitioner on January 18, 1928, waived all payments of interest on this note for a period of three years beginning on that date in return for the promise of the corporation to apply on the note any surplus income from the property after carrying charges and interest on the first and second mortgages had been paid. It also agreed to give the petitioner as additional security for the payment of the note a mortgage or mortgages on any real estate it might acquire before the expiration of the waiver on January 18, 1931.

The petitioner in 1929 sold for $500 all the stock in the corporation to William David, who was then elected president of it and continued to hold that office until its charter was cancelled in 1936 for failure to pay franchise taxes. No additional real estate was acquired by the corporation during the period of the waiver, but the petitioner continued to manage the apartment building it did own. The income from this property was not sufficient to pay the operating expenses and the interest on the first and second mortgages, however, and on February 2, 1931, the petitioner extended his waiver of the payment of interest on the note for a period of five years from that date on the same terms as before with the additional one that upon default in the payment of interest after the expiration of the waiver the principal should become due. In 1930 the corporation had a net income of $1,688.37 and in 1931 one of $2,591.54, both figured without any deduction for depreciation. Afterward the property produced less income, and by January 22, 1932, the corporation needed $1,400 to pay operating expenses. Upon the refusal of its president to advance that amount the petitioner lent it the money upon the following terms as found by the tax court: "(1) petitioner agreed to loan the corporation the sum of $1,400 for a period of two years, to be repaid on or before January 22, 1934, with interest at five per cent per annum; (2) the corporation agreed to execute and deliver to petitioner a warranty deed in fee of the property (2027 Bathgate Ave.); (3) it was mutually agreed that until said sum of $1,400 was repaid by the corporation

the petitioner or his assignees would 'collect all rents and profits from the * * * building * * * and from such collection * * * pay insurance on the building sufficient to cover loss in case of fire to the mortgagees, to pay water rents, taxes, interest on the mortgages now on the building, amortization as it becomes due and all expenses necessary to rent the building and to keep it in proper condition and to hold the balance as security for the payment of the above mentioned loan'; and (4) petitioner agreed to reconvey the property to the corporation free from all encumbrances except those existing at the time of the conveyance to the petitioner, to-wit, first mortgage of $65,000, second mortgage of $41,000 (now reduced to $28,000) and the amount of the third mortgage, upon the re-payment to the petitioner of said $1,400." A deed of the property was executed and delivered to the petitioner on the same day, January 22, 1932. On February 15, 1932, the petitioner notified the holder of the first mortgage that the property had been deeded to him, and he later made arrangements with that holder to keep the mortgage "open" though no part of the principal should be paid when it fell due on May 2, 1932. Near the end of 1932 the corporation needed additional money to prevent foreclosure and the petitioner lent it $883.62. It operated at a loss for that year, and though it did pay the interest on the first and second mortgages it defaulted on part of the principal due on the latter. During 1933 the corporation had insufficient income to pay the carrying charges on the property. When the petitioner's loan of $1,400 became due on January 22, 1934, it was not paid. In May of that year interest on the first mortgage plus taxes and water rent overdue amounted to $6,815.25. To prevent the foreclosure of that mortgage the petitioner agreed on June 10, 1934, to pay the first mortgagee $550 each month beginning June 25, 1934, and ending October 25, 1934, these sums to be applied on the above-mentioned deficit; and the first mortgagee agreed not to foreclose unless the petitioner failed to make such payments, and to reduce the interest rate for six months beginning May 2, 1934, to five per cent. Though the petitioner did not make the payments as agreed, the first mortgagee apparently did not foreclose. During 1934 and 1935 the payments due on the second mortgage were not paid in full, and in 1934 the petitioner paid out of his own funds $258.73 and in 1935 $921.83 for the account of the corporation. In 1935 the petitioner deeded

the property to Bonac Realty Corporation in exchange for all its capital stock and then transferred half of those shares to the holder of the second mortgage to prevent the foreclosure of that mortgage. In 1935 the gross income derived from the apartment building was somewhat larger than for several years previously but was still insufficient to pay operating expenses and to meet the payments due on the first and second mortgages. On February 21, 1936, the petitioner wrote the Leofrancony Realty Corporation a letter in which he demanded payment of the interest due him and reminded the corporation that principal amounting to approximately $20,000 was also due. He knew then that the corporation could not pay him and he received no reply to his demand. In this year the Leofrancony Realty Corporation's charter was cancelled as above noted and, as the tax court found, the petitioner then "became convinced * * * that his third mortgage upon the property at 2027 Bathgate Ave., and which secured his original loan to that corporation in the amount of $19,554.17, was worthless." That was the amount which he charged off in 1936 as a bad debt and deducted in his return.

■■■ We think the finding just mentioned that the petitioner "became convinced" in 1936 that the debt was worthless must be taken to show that the tax court disallowed the deduction on the ground not that he knew before 1936 that the debt was worthless but that as a reasonable man he was to be charged with such knowledge in the light of the facts which he did know concerning the debtor corporation and the property on which he held the third mortgage securing the debt. The commissioner has pointed to language in the opinion of the tax court which indicates, so it is argued, that the court reached its conclusion upon the premise that the petitioner actually knew that his debt was worthless before the year in which he charged it off. Toward the end of the opinion, reference was made to a suggestion of the commissioner that the petitioner had delayed making the charge-off until 1936 because he had no income tax liability in a previous year, and then the opinion ends as follows: "Regardless of whether this view has a reasonable basis we think it plain that the petitioner must have known long prior to 1936 that his debt was worthless. It was so plainly worthless by 1934 that there could be no ascertainment of worthlessness in

1936. Upon the record the petitioner must be charged with knowledge of its worthlessness prior to 1936. The claim of the petitioner loses touch with reality. See In re Hoffman, D.C., 16 F.Supp. 391." Previously the writer had said, "We think that the facts in this case support the Commissioner's determination that the debt was known, or reasonably should have been known, to be worthless long prior to 1936." All this read with the finding that the petitioner "became convinced" in 1936 that the debt was worthless seems to show that the tax court applied an objective test for decision which we have condemned. Although it apparently found as a matter of fact that the petitioner became convinced for the first time in 1936 that the debt was worthless, it held that he was not as a matter of law free to do so for the purpose of a charge-off for income tax deduction because a reasonable man, knowing the facts about the debtor and the security for the debt as the petitioner did, would have known in a previous taxable year that the debt was then worthless. There is no doubt, nor is any claim to the contrary here made, that as the law then stood the petitioner was bound to make the charge-off in the year in which he first ascertained the debt to be worthless. He could not delay until a favorable opportunity taxwise was presented. Nor do we quarrel with the conclusion that a reasonable man would have regarded the debt as worthless before 1936. The petitioner was, so he testified, until then indulging the hope that a rise in the value of real estate would make his security good. Events proved it a vain hope and it may have been an unreasonable one but it is clear, at least, that he did make additional loans to the debtor during the period of his optimism, the last one of nearly one thousand dollars as late as 1935, which are some evidence that he did still believe the debt had value then. Cf. Squier v. Commissioner, 2 Cir., 68 F.2d 25; Jones v. Commissioner, 7 Cir., 38 F.2d 550. At any rate we have deliberately held in this circuit that the so-called objective, or reasonable man, test of the ascertainment of worthlessness is not to be applied. A taxpayer is not bound to act, in ascertaining the value or the worthlessness of a debt due him, upon the basis of what a "reasonable man" in his shoes might determine about it. In our view the "subjective test" is the right one, and the proper year to make the charge-off is that in which the taxpayer actually makes the determination of worthlessness.

Rosenthal v. Helvering, 2 Cir., 124 F.2d 474; Curry v. Commissioner, 2 Cir., 117 F.2d 307. It is possible that the tax court might find that the petitioner did in fact know before 1936 that his debt was worthless and that his advances, one of nearly one thousand dollars in new money in 1935, were made in spite of that fact. Such a finding properly supported by the evidence would of course be a sufficient basis for the decision it made. In the absence of such a finding, however, the decision is erroneous.

Reversed and remanded for a redetermination of the deficiency.

.L. HAND, Circuit Judge (concurring).

I agree that the order must be reversed, but I would go further and expunge the deficiency. Once one accepts, as we all do, what my brothers call the "subjective test," it seems to me that there is no evidence which would permit a finding that the taxpayer did in fact "ascertain" that the debt was worthless before 1936. In Jones v. Commissioner, 7 Cir., 38 F.2d 550, and Squier v. Commissioner, 2 Cir., 68 F.2d 25, it was held that as long as a taxpayer paid more money to protect what he had already lent, it was impossible to say that he actually believed the debt to be worthless. I can imagine no motive which should induce a creditor to do so, if he thought the debt worthless, unless it was to give a false appearance of continued belief in its value and to use the loss in a later year. That seems to me to be so extravagantly unreal a supposition on the record before us that we may disregard it. For these reasons I should say that there was no "substantial evidence" to justify the ruling of the Tax Court or the Commissioner, and that the deficiency should be expunged.