## REDMAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4130.

Circuit Court of Appeals, First Circuit.

May 13, 1946.

Fulton J. Redman, of Portland, Me., pro se.

Muriel S. Paul, Sp. Asst. to Atty. Gen. (Sewall Key, acting Asst. Atty. Gen., Robert N. Anderson, Sp. Asst. to Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Bernard D. Daniels, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the Commissioner.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

In September of 1936 the taxpayer was asked to give aid to the Portland Evening News, a struggling newspaper. He became President of the Maine Publishing Corporation, the publisher of the paper, and during the fifteen months following Sep-

tember, 1936, he and his wife invested approximately $35,000 in an effort to keep the paper alive, $13,000 or $16,000 of which was received by the corporation on account of stock, the balance being represented by promissory notes of the corporation. The debenture bondholders invested about $25,000 over the same period. The taxpayer and the bondholders agreed that if the paper could be put on a successful basis, the financial set-up of the corporation would be reorganized on a fair and equitable basis as to the disposition of stocks and bonds. The money advanced and effort exerted by the petitioner were to receive recognition in any event. At least $3,500 of the advance represented by the promissory notes of the corporation came from the taxpayer's own fund. The outstanding stock, which was considered practically worthless in light of the bondholders' lien, was probably indorsed in blank to the taxpayer. The taxpayer resigned as president of the corporation in January, 1938, and the advances made by him and his wife ceased at that time. At about the same time the bondholders foreclosed and took possession under the mortgage. The bondholders continued publication of the paper for two or three months thereafter. Since that time, some or all of the machinery has been stored. During the taxpayer's term as president, the accounts receivable increased from about $6,000 to about $18,000 and were used mainly to pay off creditors. Some amount may have been paid to the bondholders. The taxpayer has not released any rights he may have had in the property of the corporation nor has any part of his advances been repaid. After publication of the paper had ceased, an unsuccessful attempt was made to interest a newspaper chain in the purchase of the paper. All hope for a revival of the paper was abandoned by the taxpayer after the attack on Pearl Harbor December 7, 1941, because of the difficulty of obtaining materials essential to publication.

In his income tax return for 1941, the taxpayer claimed a deduction of $3,500 of his advances to the corporation as a bad debt. His determination of that amount was arbitrary and was not based on any method of calculation. The Commissioner denied the deduction on the ground that the taxpayer failed to show that the debt had become worthless in 1941. The Tax Court upheld the Commissioner's decision. The taxpayer has filed a petition for review in this court.

 This case is governed by § 23(k) of the Internal Revenue Code, as amended by § 124(a) of the Revenue Act of 1942, and § 113 of the Revenue Act of 1943, 26 U.S.C.A. Int.Rev.Code, § 23(k), which allows a deduction from gross income for "debts which become worthless within the taxable year," [1] § 124(d) of the Revenue Act of 1942 and § 113(b) of the Revenue Act of 1943. Before the 1942 amendment, § 23(k) allowed a deduction for "debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable [reservation] for bad debts)." The test of ascertainment of worthlessness under § 23(k) before the 1942 amendment was deemed to be a subjective test rather than an objective one, that is, the taxpayer was entitled to charge off a bad debt in the year that he determined the obligation to him to be worthless. He was not compelled to take his deduction in the year that the debt actually had become worthless but in the year that the hypothetical "reasonable man" would consider the debt to be worthless. Harris v. Commissioner, 2 Cir., 1944, 140 F.2d 809, 811. By its amendment to § 23(k) Congress has changed the standard for the determination of worthlessness by substituting for the subjective test of ascertainment of worthlessness the objective test of actual worthlessness. Mertens, Law of Federal Income Taxation, § 30.27a, 1945 Supp. The taxpayer now has the burden of showing that the debt actually became worthless during the year for which the deduction is sought. Cittadini v. Commissioner, 4 Cir., 1943, 139 F.2d 29, 31.

 In order for the taxpayer to gain his deduction for 1941, he must show that the debt became worthless in that year.

---

[1] These amendments are effective with respect to the taxable years beginning after December 31, 1938.

Bonynge v. Helvering, 2 Cir., 1941, 117 F.2d 157. If it became worthless prior or subsequent to 1941 the taxpayer cannot be allowed a deduction for bad debt in that year. We agree that the attack on Pearl Harbor and the entry into the war by the United States did not wipe out any valuable rights the taxpayer might have had by virtue of his agreement with the bondholders. Nor does it seem that he possessed any valuable interest after 1938.

Moreover, we deem the question of the year in which the debt became worthless to be a question of fact, and the determination by The Tax Court on that issue must stand if there is any substantial basis in the evidence for it. Commissioner v. Scottish American Investment Co., 1944, 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113; San Joaquin Brick Co. v. Commissioner, 9 Cir., 1942, 130 F.2d 220. The evidence is quite sufficient to substantiate The Tax Court's finding.

The decision of the Tax Court is affirmed.