### SCOFIELD v. FIRST NAT. BANK IN HOUSTON et al.

#### No. 11566.

Circuit Court of Appeals, Fifth Circuit.

Dec. 5, 1946.

A. M. Sellers, Sp. Asst. to Atty. Gen., Sewall Key, Acting Asst. Atty. Gen., and

Brian S. Odem, U. S. Atty., and Joseph W. Cash, Asst. U. S. Atty., both of Houston, Tex., for appellant.

Edward S. Boyles and M. U. S. Kjorlaug, both of Houston, Tex., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was brought by First National Bank of Houston and First National Bank in Houston, as its successor, for a refund of $21,136.49, paid by First National Bank of Houston as income taxes for the calendar year 1937. The successorship is without bearing on the issues in the case, and reference hereafter to plaintiffs-appellees, as taxpayers or otherwise, will be in the singular.

The claim was that plaintiff sustained a loss in that year of $150,000, as the result of a contribution it made in 1931 to a bank liquidation indemnity fund,[1] and that in disallowing it as a deduction and later in refusing claim for refund, the commissioner had erred.

The collector, denying that plaintiff had sustained the loss claimed, and admitting

---

[1] Summarized, these are the facts as stipulated and found by the court:

In 1931, the Public National Bank and Trust Company of Houston, hereafter called "Public," was in financial difficulties and about to close its doors. A number of other banks and business institutions, including taxpayer, fearing that a general business crash would follow such closing, raised an indemnity fund of $1,200,000 to be paid over to the National Bank of Commerce of Houston, under an arrangement by which it would, as "Liquidating Agent," take over Public, assume its liabilities and liquidate it.

The taxpayer paid $150,000 into the fund with the understanding with Liquidating Agent that: (a) If in liquidating, "you sustain losses equal to or exceeding" the fund, "then the full amount of the fund shall belong to you"; (b) if no loss or a loss of less than the guaranty fund is sustained, a pro rata refund should be made to the subscribers; (c) final settlement with the subscribers shall be made when the liquidation is fully completed, provided that pro rata refunds would be made from time to time as, and to the extent that, the indemnity fund was in excess of the liabilities assumed.

On December 13, 1932, at the instance of Liquidator, a receiver was appointed for Public with authority to wind its business up. On February 1, 1933, the comptroller assessed Public's stockholders for full payment on or before March 8, 1933, of their liabilities, totaling $800,000. Few of the 158 stockholders were solvent, however, and of the total amount assessed, only $146,306.34 was collected by the Receiver and paid to Liquidator.

On March 29, 1933, there was due and owing Liquidator the sum of $2,964,743.25, and in May, 1933, the receiver of Public, under court authority, for the sum of $1,150,000, sold all of its assets, except stockholders' liability, to Liquidator, which credited Public's indebtedness with that sum, leaving due $1,814,743.25.

On December 15, 1933, it having become manifest that only a small part of the stockholders' liability assessments would be collected and that Liquidator's losses would greatly exceed the indemnity fund, Liquidator appropriated the entire amount of the guaranty fund to its own use.

In the year 1933, judgments totaling $72,479.68 against sixteen different stockholders of the Public National Bank and Trust Co., in suits to enforce their stockholders' statutory liability, were obtained by the receiver; in 1934, judgments totaling $277,337.13 against twenty-nine stockholders; in 1935, judgments totaling $2,916.47 against four stockholders; and, in 1936, judgments totaling $11,378.41 against three stockholders.

In 1934, Liquidator received from Public's receiver on account of stockholders' liabilities, $137,295, and in 1937, $9,012.74.

On August 12, 1937, the receiver of Public, on a petition showing, with respect to stockholders' liabilities, that $65,006.12 of the 1933 judgments, $276,687.13 of the 1934 judgments, and all of the 1935 and 1936 judgments remained uncollected and unsatisfied, obtained an order authorizing sale of all of the uncollected judgments to the Liquidator for $38,003.38.

On November 8, 1937, Liquidator prepared a final statement, showing that it had sustained a loss of $373,278.00 over and above the guaranty, and sent a copy to Taxpayer and others.

On March 10, 1938, Taxpayer filed its return for the calendar year 1937, claiming as a loss deduction the $150,000 it had paid into the fund in 1931.

that the commissioner had disallowed the deduction, defended on the ground that the claim for refund[2] did not, nor does the plaintiff's petition, state any fact showing that plaintiff's claim for deduction and refund has any valid basis in law. In addition to the stipulation which covered most of the facts, there was oral testimony on the part of Taxpayer that it had carried the item of $150,000 in suspense and had not claimed it until 1937, when the Liquidator made its final report.

Defendant, on its part, proved that though Taxpayer had not claimed it as a deduction in that year, it had, in 1931, charged its contribution to the fund to profit and loss. It also proved by Mr. Doherty, the executive vice-president, that Liquidator had in 1931 charged off its contribution to the fund as a then recognized and realized loss, and that in 1933, when it appropriated the indemnity fund to its use, it was definitely clear beyond doubt that there would be a loss to Liquidator in excess of the guaranty, fund, and no part of it would be refunded.

It was undisputed as to some of the other contributors that they charged their contributions off as losses in 1932 or 1933. There was no evidence that any other contributor, except the taxpayer, had undertaken to treat the Liquidator's final statement as an identifiable event fixing loss in 1937. No one on Taxpayer's behalf testified to any fact disputing Mr. Doherty's testimony that it was clearly determined in 1933 that Liquidator's losses would exceed Public's assets by more than the guaranty fund, and that no part of it would be refunded.

The district judge found that Taxpayer had in 1937 sustained a loss not compensated for by insurance or otherwise, and under Section 23(f), 26 U.S.C.A. Int.Rev. Code, was entitled to deduct it in that year. He based this finding upon his conclusion of law that, since there was no definite time fixed for liquidating Public, and a complete liquidation with report from the Liquidator and its acceptance by Taxpayer did not occur until 1937, the loss did not occur until that year. He stated it this way:

"The agreements created a trust with the liquidating agent as trustee, and the taxpayer was not bound by any action of said agent or trustee until a full report was made to it and it knew all the facts. When the report was received, the taxpayer had the right to object to all or any part of it, to sue to set it aside, wholly or in part, and there could be no loss until taxpayer expressly or impliedly approved what the agent or trustee had done. Taxpayer was not bound by rumors, newspaper reports, or the actions of other subscribers to the guaranty fund. I conclude that taxpayer sustained such loss of $150,000.00 in 1937 * * * and that such loss was properly deducted."

■■ Section 23 of the Revenue Act of 1936,[3] which is the applicable statute here, in its several subsections provides for many kinds of allowable deductions. The only subsections which could possibly apply here are (a) Expenses (1) In General; (f) Losses by corporations sustained during the taxable year and not compensated by insurance or otherwise; and (k) Bad debts. Taking these subsections in turn, it is perfectly clear that if the $150,000 was a business expense, it was incurred in 1931, and must have been taken in that year, but we think it plain that it was not a business expense within the meaning of the subsection. It remains only to inquire whether and when it was allowable as a deduction under either subsections (f) or (k).

The district judge found, and the taxpayer, both in its claim and in its suit for refund, seems to urge, that the deduction was a loss under subsection (f), and that because of the agreement providing for the return of a part or all of it, if Public's assets exceeded its liabilities, it was allowable as a deduction not in the year in which it was advanced but in the year when by an identifiable event it can be determined that it became a loss.

2 "Taxpayer is entitled to deduct the $150,000 contribution made in October, 1931, to the indemnity fund which guaranteed the National Bank of Commerce of Houston, Texas, against loss to the extent of said fund in the liquidation of the assets of the Public National Bank and Trust Company, Houston, Texas, as a proper deduction in the calendar year 1937."

3 26 U.S.C.A. Int.Rev.Code, § 23.

■ We think so too, but we think it quite plain that the final report of Liquidator in 1937 was not such an event. It was for the taxpayer and not for the government to show the year in which the loss was actually sustained, and the evidence leaves in no doubt that this was long before 1937.

In 1933, it was quite plain: that only a small portion of the stockholders' assessments would be collected; that no part of its contribution would be returned to Taxpayer; and that it had, therefore, suffered a realized loss in respect to the full amount of it. In 1933, there were many identifiable events which determined that the contribution was a loss. In that year the Comptroller, by assessing the stockholders and making the assessments payable in March, brought to a determination the value of this asset. In that year the Liquidator took over all of Public's assets except the liability of stockholders. In December of that year, it having become evident that only a small part of the stockholders' liability would be realized upon and no part, therefore, of the indemnity fund would ever be returnable, Liquidator took it over and appropriated it to its own use.

But if it might be said that, since suits were being brought and judgments obtained against stockholders in 1934, and what would be realized from them and, therefore, whether and what loss had been sustained by Taxpayer could not be known until it could be more clearly told what could be realized from those suits, this would not help Taxpayer. For it is quite plain that certainly long before 1937 the fact that there would not be enough received from that source to make Liquidator whole and thus release any part of the indemnity fund had become completely manifest.

The claim, with which the district judge agreed, that the loss was not sustained until 1937, when Liquidator issued its winding up statement, flies in the face of the undisputed facts that identifiable events, which made the loss certain, occurred many years before.

■■ Finally, though taxpayer did not in its claim for refund, and does not here, definitely assert that the loss was a bad debt loss, if it should be considered as one, this would not help taxpayer. For though, under the statute as it read before its amendment in 1942, "Debts ascertained to be worthless and charged off within the taxable year," the taxpayer's own conclusions as to when the loss occurred is entitled to weight, under the rule obtaining in this circuit[4] and in most of the others,[5] though not in the Second Circuit,[6] that taxpayer must act with intelligence and in good faith in making the ascertainment, he may not shut his eyes to the determining facts. Under that rule it is quite plain that the facts of this case require the holding that, if the taxpayer did not ascertain the worthlessness of the debt and charge it off before 1937, it was because he shut his eyes to the real facts of the situation and refused to make the ascertainment which the facts required. The commissioner was right in disallowing the deduction and in refusing the claim. The district judge was wrong in ordering a refund. The judgment is reversed, and the cause is remanded with directions to find for the defendant.

---

[4] Avery v. Commissioner, 5 Cir., 22 F. 2d 6; Quinn v. Commissioner, 5 Cir., 111 F.2d 372.

[5] Reading Co. v. Commissioner, 3 Cir., 132 F.2d 306; Sabath v. Commissioner, 7 Cir., 100 F.2d 569.

[6] Harris v. Commissioner, 2 Cir., 140 F.2d 809; Rosenthal v. Helvering, 2 Cir., 124 F.2d 474.