**WATKINS v. GLENN, Collector of Internal Revenue.**
**Civ. No. 1436.**

United States District Court
W. D. Kentucky, at Louisville.
Jan. 10, 1950.

Henry H. Mathis, Louisville, Kentucky, attorney for plaintiff.

Theron Lamar Caudle, Assistant Attorney General, Andrew D. Sharpe, Harry B. DeAtley, Special Assistants to the Attorney General, David C. Walls, United States Attorney, Louisville, Kentucky, attorneys for defendant.

SHELBOURNE, Chief Judge.

This suit filed February 14, 1948, seeks recovery from the Collector of Internal Revenue of this District of $4,520.64, the amount, with interest, of an assessment against the plaintiff on income taxes for the fiscal year ending June 30, 1943.

The validity of the assessment is dependent upon whether the plaintiff properly deducted on his income tax return for the fiscal year ending June 30, 1943, an indebtedness due him by Fincastle Realty Company.

The deduction was attempted to be made under Section 23(k) of the Internal Revenue Code, as amended by section 124(a) of the Revenue Act of 1942 and section 113 of the Revenue Act of 1943, Title 26 U.S.C.A. § 23(k), which allows a deduction from gross income for debts which become worthless within the taxable year.

### Findings of Fact

1. The plaintiff was president and controlling stockholder of Fincastle Realty Company, a Kentucky corporation, organized December 18, 1923.

2. In the years 1929 until its legal dissolution, June 30, 1942, the corporation annually sustained substantial losses and admittedly was insolvent.

The tax returns of the corporation from 1929 through June 30, 1941, show the following gross income and net loss for each of the years—

| Year | Gross-Income | Net Loss |
|---|---|---|
| 1929 | $11,963.53 | $21,691.31 |
| 1930 | 9,585.93 | 17,702.06 |
| 1931 | 8,077.25 | 11,989.08 |
| 1932 | 1,953.29 | 17,339.77 |
| 1933 | 925.40 | 7,752.44 |
| 1934 | 103.76 | 2,849.26 |
| 1935 | 110.16 | 2,699.04 |
| 1936 | 116.94 | 22,052.16 |
| 1937 | 241.63 | 7,537.79 |
| 1938 | 599.32 | 15,107.54 |
| 1939 | 219.01 | 10,233.17 |
| 1940 | 219.01 | 10,733.17 |
| 1941 | 219.01 | 10,233.17 |
| 1942 | Non-taxable return filed | |

3. Admittedly from 1934, all of the real estate owned by the company was mortgaged beyond its actual or marketable value.

4. Beginning in the year 1928, and continuing as frequent necessities arose, the plaintiff advanced to the Company sums of money and became personally bound on numerous notes. In 1938, plaintiff by settlement procured his release from his personal liability on the Company's obligations and for the taxable year 1939, he claimed and was allowed a deduction of $4,000 on debt losses on the Company's notes, which he had indorsed and for the tax year 1940, he received a similar deduction in the sum of $371.

5. In his income tax return for the fiscal year 1942, he claimed and was allowed a deduction of $27,700 on account of his ownership of the Company's then worthless stock.

6. In the year 1938, the Louisville Trust Company, mortgagee on the then existing mortgages, on all the real estate, took over the management and control of the real estate and received the rentals accruing from same until June 1942, when the last of the real estate was conveyed to the Louisville Trust Company in consideration of the cancellation of the indebtedness owed to it by the Realty Company.

7. June 30, 1942, the corporation was legally dissolved. It owned and had on hand a small amount of office furniture and certain notes and accounts, which brought in liquidation an aggregate sum of $255, which was distributed by the liquidator as follows—

Preferred Claims:

| | |
|---|---|
| Advertising | $ 4.50 |
| State of Kentucky | 55.00 |
| Liquidator | 25.50 |
| Paid to Creditors | 170.00 |

$255.00

| Creditors | Claim | Distribution |
|---|---|---|
| Frank Feldstein | $27,628.50 | 42.80 |
| Homestead Co. | 5,260.00 | 8.20 |
| Lowry Watkins | 76,868.99 | 119.00 |
| Total | | 170.00 |

4. The plaintiff participated in the pro rata distribution among the general creditors on the basis of an indebtedness of $76,868.99, though he admits in his testimony in this case that his indebtedness should have been at that time $43,000. However, it is immaterial in this action which one of said amounts properly represented in indebtedness as the deduction of either amount from his income in 1943 would have obviated the payment of any income tax by him for that year.

9. At all times during the existence of Fincastle Realty Company, the plaintiff was an alter ego of the corporation and exclusively and personally managed and conducted its affairs.

10. Plaintiff's indebtedness of $76,868.99 against Fincastle Realty Company was worthless and was deductible as a bad debt under Section 23(k) prior to the fiscal year beginning July 1, 1942.

Conclusions of Law

1. The question determinative of this action is whether the indebtedness of the corporation to plaintiff of $76,868.99 became a bad debt within the meaning of Title 26 U.S.C.A. § 23(k) in the fiscal year 1943.

That subsection is as follows—

"Bad debts.

"(1) General Rule.—Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * *"

Certain Treasury Regulations promulgated under the Internal Revenue Code are

referred to by Counsel and the relevent regulations are as follows—

"Sec. 2923(k)-1 (As amended by T. D. 5376, 1944 Cum.Bull. 119.)

"Bad Debts—(a) Bad Debts may be treated in either of two ways—

"(1) By a deduction from income in respect of debts which become worthless in whole or in part, or

(2) By a deduction from income of an addition to a reserve for bad debts. Taxpayers were given a similar option for 1921 to select either of the methods mentioned for treating such debts (See article 151, Regulations 62.) While ascertainment of worthlessness and charge-off during the taxable year (which were prerequisite to deduction of a bad debt under the law at that time) are no longer required for the allowance of a debt which became wholly worthless, the method used in the return for 1931, must be used in returns for all subsequent years unless permission is granted by the Commissioner to change to the other method. * * *

"(b) * * *

"If a debt becomes wholly worthless during the taxable year, the amount thereof which has not been allowed as a deduction for any prior taxable year shall be allowed as a deduction for the taxable year."

The Court of Appeals of the Sixth Circuit in Rhodes v. Commissioner of Internal Revenue, 100 F.2d 966, 969, in an opinion by the late Judge Hamilton, made the following observation with respect to the proper interpretation of income tax laws—

"Common sense interpretation is the safest rule to follow in the administration of income tax laws. Gross income and deductions flow from trade, commerce and dealings in property carried on in the ordinary business way and in the determination of taxes men should measure both by ordinary, everyday business standards. * * * Generally speaking, the income tax law is concerned only with realized gains and ascertained losses. There is an exception to this rule, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction and in certain circumstances even before they are absolutely sustained. Lucas, Commissioner v. American Code Company, 280 U.S. 445, 452, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010.

"The question whether property becomes worthless during a particular year is one of fact."

█ A taxpayer must act with intelligence and with good faith in claiming any deductions on account of losses and may not close his eyes to the determining facts. If a taxpayer does not ascertain the worthlessness of a debt and charge it off in the year in which, it in fact becomes worthless, he should be denied the deduction as he cannot shut his eyes to the real situation and refuse to recognize facts which are determinative of his right to the deduction. Scofield v. First National Bank, 5 Cir., 158 F.2d 268, 271.

Prior to the amendment of Section 23(k) by Section 124(a) of the Revenue Act of 1942 and Section 113 of the Revenue Act of 1943, the section allowed a deduction for debts "ascertained to be worthless and charged off" within the taxable year.

█ The test of ascertainment of worthlessness under 23(k), before the 1942 amendment, was deemed to be a subjective test rather than an objective one, and the taxpayer could properly claim the deduction in the year in which he determined the indebtedness to have become worthless, regardless of the year in which the debt actually did become worthless, so long as he exercised reasonable judgment; but, by the amendments, the test for determining worthlessness and the proper time for deduction was made objective rather than subjective. Thereafter, the taxpayer had, and now has, the burden of showing that the indebtedness became worthless in the year in which the deduction is sought.

█ The amendments to 23(k) in the years 1942 and 1943 were made retroactive to the taxable years beginning after December 31, 1938. See Redman v. Commissioner of Internal Revenue, 1 Cir., 155 F. 2d 319.

█ Prior to the amendment, as held by this Court in Barnes v. Glenn, D.C., 56 F.

Supp. 285, 286, the taxpayer was not charged with the duty of ascertaining the worthlessness of a bad debt at any time before he actually did so.

■ Plaintiff contends in this case that the "identifiable event" authorizing the deduction of the indebtedness in the fiscal year ending June 30, 1943, was the dissolution of the corporation which became effective on June 30, 1942. Also that the statute, Section 23(k), in the use of the word "worthless" unmodified or qualified by use of such words as "substantially worthless", "nearly worthless", "approximately worthless" and "relatively worthless", means as applied to this case, that on July 1, 1942, the beginning of taxpayer's fiscal year 1943, the ownership by the company of the small amount of office furniture and accounts aggregating in value $255, and on which the plaintiff received $119, prevented the indebtedness from being considered worthless until the year in which the last vestige of property belonging to the corporation had been liquidated and distributed among the creditors.

Such a construction of Section 23(k) would nullify that part of the section allowing the deduction of a portion of the indebtedness and the Commissioner's regulation providing that the amount of an indebtedness which "has not been allowed as a deduction for any prior taxable year," may be allowed in the taxable year in question.

It would mean in this case that the preservation of the office furniture and assets aggregating in value $255, sufficient only to pay nominal liquidating fees, one preferred debt in the sum of $55 and a percentage pro rata on unsecured indebtedness aggregating $109,757.49 of two and one-third thousandths, would prevent an indebtedness of $76,868.99 from being regarded as worthless, because of the possibility of realizing $119 thereon.

■ Deduction from gross income of losses resulting from bad debts is controlled by "identifiable events" the occurrence of which prevent their collection. United States v. White Dental Mfg. Company, 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120.

"And a determination of whether a loss was in fact sustained in a particular year cannot fairly be made by confining the trier of facts to an examination of the taxpayer's beliefs and actions. Such an issue of necessity requires a practical approach, all pertinent facts and circumstances being open to inspection and consideration regardless of their objective or subjective nature. * * * The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal test." Boehm v. Commissioner, 326 U.S. 287, 292, 293, 66 S.Ct. 120, 123, 90 L.Ed. 78, 166 A.L.R. 708.

Neither "undue pessimism" nor "incorrigible optimism" is required from the taxpayer.

"By its amendment to § 23(k) Congress has changed the standard for the determination of worthlessness by substituting for the subjective test of ascertainment of worthlessness the objective test of actual worthlessness." Redman v. Commissioner of Internal Revenue, supra [155 F.2d 320].

"'An identifiable event' in the taxing decisions, as we understand it, is an incident or occurrence that points to or indicates a loss—an evidence of a loss. The evidence need not, though, consist of stereotypic plan or scope. It may vary according to circumstances and conditions." Industrial Rayon Corporation v. Commissioner of Internal Revenue, 6 Cir., 94 F.2d 383.

"In establishing the date of worthlessness, the taxpayer is aided by the rule that the date is to be fixed by 'identifiable events' which form the basis of reasonable grounds for abandoning any hope for the future." Joyce v. Gentsch, 6 Cir., 141 F.2d 891, 897.

It is therefore concluded—

(1) That the hopeless insolvency of Fincastle Realty Company in the years of its existence following 1939—

(2) The taking over of all of the real estate by the mortgagee, Louisville Trust Company—

(3) Subsequent conveyance by Fincastle to the Trust Company in 1942 of all of its tangible property save its office furniture, and—

(4) The legal dissolution of the Fincastle Realty Company,— all prior to July 1942, were "identifiable events" which viewed objectively demonstrated the actual worthlessness of indebtedness to its general creditors, including the $76,868.99 indebtedness of the plaintiff herein, prior to July 1, 1942.

II. The plaintiff has not, in this action, shown that the Commissioner erroneously disallowed the deduction attempted to be made by plaintiff in the fiscal year ending June 30, 1943.

III. Plaintiff is therefore not entitled to recover in this action.

### Conclusion

Plaintiff's petition should be dismissed and defendant should have recovery for its costs and judgment so providing will be tendered by defendant, upon notice.