GEORGE AFTERGOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

KATHRYN AFTERGOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 28960, 28961. Promulgated October 15, 1953.

*W. L. Engelhardt, Esq.*, for the petitioners.
*Clayton J. Burrell, Esq.*, for the respondent.

## OPINION.

RICE, *Judge:* Respondent contends that petitioner's payment of $2,000 in compromise and settlement of the action on his promissory note of $5,000 was in discharge of an individual obligation and, therefore, is not deductible from gross income; and, further, that the release and cancellation of the $3,000 was income properly includible in his 1944 Federal income tax return. Petitioner claims that the $2,000 payment was a business expense or a business loss properly deductible in 1944. In the alternative he contends that, in the event that income in the amount of $3,000 was realized, $5,000 is deductible (a) as a business expense or loss; (b) as an uncollectible account due from the bankrupt corporation; or (c) as a long-term capital loss through increase of the basis of investment in the defunct corporation.

The record in this case discloses that by February 13, 1937, Hollyvogue Knitting Mills owed Silverman $5,000. Because Silverman wanted additional security on this debt, petitioner executed a $5,000 promissory note on that date. The evidence is clear that the debt was that of Hollyvogue and not a personal obligation of petitioner prior to such date. He received nothing of value when he executed the note and eventually sustained a sizeable out-of-pocket loss when required to settle it. He did no more than lend his name to the corporation as added security for an aggregation of debt which it owed to Silverman. He was an accommodation maker or guarantor of the corporation's debt.[1]

The entry in the corporation's general journal on February 15, 1937, purporting to wipe out its indebtedness to Silverman and to show a

[1] The Civil Code of California, Div. 3, pt. 4, tit. 15, ch. 1, art. 2, sec. 3110 provides:
* * * An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party.

$5,000 donation to surplus by petitioner's wife, does not change the fundamental nature of petitioner's position.

As a guarantor, petitioner's liability was contingent; and even though Hollyvogue became irredeemably insolvent the following year and he knew without question that he, personally, must pay its debt at Silverman's demand, he was not entitled to a deduction until payment was, in fact, made. *Eckert* v. *Burnet*, 283 U. S. 140 (1931).

In 1944, petitioner's contingent liability was realized by the payment of $2,000 in settlement of Bessie Silverman's suit on his note.

Any resulting deduction must be on account of a nonbusiness bad debt under section 23 (k) (4) of the Code.[2] When a guarantor "is forced to answer and fulfill his obligation of guaranty, the law raises a debt in favor of the guarantor against the principal debtor." *Kate Baker Sherman*, 18 T. C. 746, 751 (1952). It does not matter that the obligation raised by the law was totally worthless when it arose. *Agnes I. Fox*, 14 T. C. 1160 (1950), revd. 190 F. 2d 101 (C. A. 2, 1951); *Barnhart-Morrow Consolidated*, 47 B. T. A. 590 (1942), affd. 150 F. 2d 285 (C. A. 9, 1945). The cases of *Abraham Greenspon*, 8 T. C. 431 (1947), and *Frank B. Ingersoll*, 7 T. C. 34 (1946), relied on by petitioner are distinguishable on their facts.

Having determined that petitioner, as guarantor of the corporation's obligation, sustained a nonbusiness bad debt under section 23 (k) (4), it follows that he incurred no taxable gain from the note settlement transaction.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

BLACK, *J.*, dissenting: I think the facts clearly show that in the taxable year petitioner incurred a loss of $2,000 and that he is entitled to deduct that loss under section 23 (e) (1) or (2) of the Code. I am unable to agree with the majority opinion in this case that petitioner's loss was of a nonbusiness bad debt within the meaning of section 23 (k) (4) of the Code. When petitioner paid the $2,000 in 1944 in compromise of his indebtedness of $5,000 to Silverman, he had no debt against anyone. No debtor was in existence.

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

*   *   *   *   *   *   *

(k) BAD DEBTS.—

*   *   *   *   *   *   *

(4) NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3), and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

64

The petitioner testified, and other evidence indicates, that the corporation liquidated and went out of business in 1938. The majority opinion found merely that the corporation carried on no further business activity after 1938. I think that the record justifies a finding that the corporation not only went out of business in 1938, but that it also ceased to exist at that time. If that be true, it follows that when the petitioner settled the suit by the payment of $2,000 in 1944, no debt from the corporation to the petitioner could then arise. *Abraham Greenspon*, 8 T. C. 431. See also *Fox* v. *Commissioner*, 190 F. 2d 101.

In the case of *Frank B. Ingersoll*, 7 T. C. 34, we held that a stockholder of a corporation who guaranteed a mortgage note of the corporation and subsequently had to pay about $12,000 under his guarantee, after the reorganization of the corporation in a bankruptcy proceeding, sustained a business loss. So it seems to me that under the foregoing decisions petitioner is entitled to an ordinary loss of $2,000 and that his loss should not be limited by the provisions of the Code applicable to nonbusiness bad debts.