## WATSON v. FAHS.
### Civ. A. 3915–M.

United States District Court,
S. D. Florida, Miami Division.
April 17, 1954.

Morehead, Forrest, Gotthardt & Orr, Lawrence G. Ropes, Jr., and Bernard R. Fleisher, Miami, Fla., for plaintiff.

James L. Guilmartin, U. S. Atty., J. Edward Worton, Asst. U. S. Atty., Miami, Fla., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Mamie S. Price, Sp. Assts. to Atty. Gen., for defendant.

WYCHE, District Judge. (sitting by designation)

This is a suit for refund of income taxes assessed and collected as a deficiency for the year 1946, plus interest thereon, in the total amount of $3,108.66, and statutory interest on that total from the date of payment, November 15, 1950. Plaintiff in her income tax return for 1946, claimed a deduction in the sum of $5,115, as a non-business debt which she alleges became worthless during that year. The Commissioner of Internal Revenue disallowed the deduction on the ground that the debt became worthless prior to 1946, and, therefore, was not deductible in that year under the provisions of 26 U.S.C.A. § 23(k)(4). A claim for refund of the sum paid, plus interest thereon, was filed by the taxpayer on March 28, 1951, and was disallowed by the Commissioner on July 27, 1951.

This suit for refund was then filed by the taxpayer in August, 1951.

On January 18, 1954, the case was tried before me and a jury. At the conclusion of the evidence the attorney for the Collector and the attorney for the taxpayer, each made a motion for directed verdict, and I concluded that the sole question involved was one of law, and, by consent, took the case from the jury and instructed the parties to file briefs.

In compliance with Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above case, as follows:

### Findings of Fact

1. Plaintiff is an elderly woman about eighty-six years old, and her son P. L. Watson has managed all her business affairs since 1925, including the loan involved in this controversy.

2. The plaintiff, through her son P. L. Watson, loaned G. H. McKenzie $5,-125 on July 28, 1925, evidenced by three promissory notes, due one, two and three years from date, and secured by a second mortgage on real estate in Florida.

3. G. H. McKenzie at the time of the loan had been in the real estate business in Florida for a number of years as a general broker, associated with a large firm in the Miami area, and was well acquainted with P. L. Watson.

4. At the time the loan was made P. L. Watson relied more on G. H. McKenzie's character and ability in the real estate business to enable him to pay the indebtedness, than on the second mortgage securing the loan.

5. Although G. H. McKenzie was unable to make payments on the notes prior to 1946, he retained his real estate license and always intended to pay the notes out of any successful real estate deals he might be able to make, and he thought his prospects looked good in that endeavor.

6. Prior to 1937, P. L. Watson personally contacted G. H. McKenzie on the anniversary of each interest or principal date about payment of the notes and though the debtor was unable to make payment, the debtor's real estate prospects seemed good and the debtor promised payment.

7. Prior to 1937, P. L. Watson contacted his attorney Thomas Jean Ellis about the notes and was advised by his attorney to hold them rather than sue on them and obtain judgment thereon.

8. In 1937, W. M. Brodie, holder of a prior mortgage on the real estate upon which the taxpayer held a second mortgage, brought suit and foreclosed his mortgage. The debtor G. H. McKenzie was a defendant to the foreclosure action. Any security the taxpayer may have had in the second mortgage was lost in the foreclosure. Thereafter, the notes held by the taxpayer continued as obligations of G. H. McKenzie without collateral. No payment was ever made on the obligation, although P. L. Watson on numerous occasions, particularly from 1937 through 1945, personally contacted G. H. McKenzie and requested payment, or at least some part payment on the debt. The debtor always told P. L. Watson that he was not able to make any payment at the time, but hoped to be able to do so in the future.

9. The advice given to P. L. Watson by his attorney at the time of the foreclosure of the mortgage was based solely upon his faith in the integrity and the character and reputation of G. H. McKenzie and the ability he had previously shown in the real estate business; P. L. Watson learned at the time he consulted his attorney that the debtor had no property and no equity in any property with which to furnish any further security for the notes, or upon which execution could have been made for payment of any judgment against the debtor. No steps were taken to reduce the debt to judgment.

10. From 1937, through 1945, P. L. Watson consulted his attorney Thomas Jean Ellis, and his attorney Tom Anderson, on several occasions about the notes and was advised by them to hold the

notes. Between these dates P. L. Watson made personal inquiries as to the financial ability of G. H. McKenzie and contacted him at least twice a year and on these occasions G. H. McKenzie always told him of prospects and promised to pay the notes.

11. From 1937, to 1941, G. H. McKenzie was a real estate broker and his only income during that time was such commissions that he made as such broker.

12. During the war years and shortly thereafter the real estate market in Miami was bad because of restrictions on property and in 1941, although he retained his real estate license, the debtor became inactive in the real estate business and was employed by the Dade Pharmacy in Miami, at a modest salary. He has continued in such employment since that time. His financial condition had not materially changed in 1946, from what it had been in 1941; his only means of payment of the debt after 1941, was from his salary.

13. In 1943, or 1944, the debtor had a real estate prospect involving the sale of business property for some $200,000, on which he would have made enough commissions to pay off the debt, but the deal fell through.

14. Around 1933, and particularly in 1936, 1937, and 1938, Thomas Jean Ellis made an investigation as to the assets of the debtor, including speaking with leading real estate brokers on Miami Beach, all of whom vouched for the reputation of the debtor and said the debtor was of average or better ability in the real estate field.

15. During the years after 1937, and prior to 1946, the attorney Thomas Jean Ellis felt there was a reasonable possibility of recovery on the notes and· felt that way each time the matter was brought to his attention.

16. Late in 1945, Thomas Jean Ellis advised P. L. Watson that the statute of limitations was ·about to run ·on the notes and advised him to sue on the notes or effect a compromise and the idea of compromise was to salvage as much as possible on the notes.

17. On December 22, 1945, the debtor offered in a letter to P. L. Watson to compromise the debt for $10, and requested a release of the obligation in order to prevent the extending of the statute of limitations, if such offer were accepted. In 1946, P. L. Watson finally accepted the offer and gave the debtor a release of the obligation on the notes.

Conclusions of Law, Opinion and Order

26 U.S.C.A. § 23(k)(4) is as follows: "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions: * * * (k) Bad debts. * * * (4) Non-business debts. In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term 'non-business debt' means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business."

■ The Commissioner's finding that a deduction of a debt as worthless is improper, is *prima facie* correct, and the burden is upon the taxpayer to show by a preponderance of evidence that the Commissioner's finding is incorrect. Quinn v. Commissioner of Internal Revenue, 5 Cir.,. 111 F.2d 372, 373; Avery v. Commissioner of Internal Revenue, 5 Cir., 22 F.2d 6, 8, 55 A.L.R. 1277; Hirsch v. Commissioner of Internal Revenue, 9 Cir., 124 F.2d 24, 28; Welch v. Helvering, 290 U.S. 111, 115.

■ Section 23(k)(4) of the Internal Revenue Code, provides for deduction only of debts which become worthless in fact within the taxable year. Prior to the amendment of this statute in 1942, the taxpayer was allowed some latitude in "ascertaining" when a debt became worthless for deduction purposes. Since that amendment, however, the taxpayer's

belief with respect to collectibility, and his faith in the debtor's integrity or intentions, are not bases for determining worthlessness within the meaning of the statute; the only test is whether the debt actually became worthless within the taxable year claimed; by its amendment to Section 23(k) Congress has changed the standard for the determination of worthlessness by substituting for the subjective test of ascertainment of worthlessness the objective test of actual worthlessness; the taxpayer now has the burden of showing that the debt actually became worthless during the year for which the deduction is sought. Cittadini v. Commissioner of Internal Revenue, 4 Cir., 139 F.2d 29, 31; Redman v. Commissioner of Internal Revenue, 1 Cir., 155 F.2d 319, 320.

The time for deduction of a debt under the provisions of this statute as it existed in 1946, the tax year involved here, was the year within which the debt actually became worthless, not when the taxpayer discovered it to be worthless, or first came to believe that it was uncollectible.

The testimony shows that nothing was paid on the debt in this case between 1926, when the first note became due, and the date the obligation was released in 1946, in spite of continued contacts with the debtor and numerous requests for some payment thereon and numerous promises to pay. There is no evidence that any interest was ever paid on the debt, although interest at the rate of eight per cent. per annum was running from 1925.

▇ Whatever security there was for this debt was lost in 1937, in the foreclosure of a prior mortgage. After that date the debtor owned no property and had no equity in any property which he could have mortgaged as security or upon which execution could have been made for payment of any judgment secured against him. During the nine years from 1937, to 1946, the taxpayer made no attempt to secure a judgment because it was realized that the debtor had no assets from which collection could be made, and no foreseeable prospects of acquiring any such assets. The debtor had only hopes of getting into a better financial position at some indefinite time in the future. From 1937, to 1941, his income consisted solely of such commissions as he made as a real estate broker, and from 1941, to 1946, his only income was a moderate salary upon which he depended for support of himself and his family. In 1946, the obligation was released, upon the payment of the sum of $10. There was no material change in the debtor's financial condition in 1946, from what it was in 1941. The only change in the situation in 1946, appears to have been the running of the statute of limitations. The availability of such a defense to a debtor is not a sufficient ascertainment of worthlessness to justify a charge off of a note or other debt; the running of the statute of limitations does not extinguish a debt or render it worthless, but merely provides the debtor with an affirmative defense which may be pleaded in an action instituted against him for the collection of a debt. Bank of United States v. Donnally, 8 Pet. 361, 8 L.Ed. 974; Cross v. Commissioner of Internal Revenue, 20 B.T.A. 929, affirmed 9 Cir., 54 F.2d 781; Commissioner of Internal Revenue v. Burdette, 9 Cir., 69 F.2d 410, 411; Spratt v. Commissioner of Internal Revenue, 43 B.T.A. 503; Leo Stein, 4 B.T.A. 1016; W. S. Mitchell Co. v. Commissioner of Internal Revenue, 27 B.T.A. 645, 648.

▇ Under the facts in this case I cannot hold as a matter of fact that the debt was not worthless in any year prior to 1946, and became worthless during the year 1946. I must, therefore, conclude that the plaintiff was not entitled to deduct the debt on her income tax return for the calendar year 1946, and that the defendant is entitled to judgment.

Judgment should be entered for the defendant, and

It is so ordered.