Max Greenhouse and Mary Greenhouse v. Commissioner.
Greenhouse v. Commissioner
Docket No. 40052.
United States Tax Court
T.C. Memo 1954-144; 1954 Tax Ct. Memo LEXIS 102; 13 T.C.M. (CCH) 849; T.C.M. (RIA) 54250; August 30, 1954, Filed *102 Held, upon the facts, that business of manufacture of foam rubber was carried on by a corporation organized for that purpose, and not by one of petitioners and his "co-promoter." Held, further, upon the facts, that funds paid in for the purposes of the business carried on by said corporation were contributions to capital, and not loans. Petitioners' losses in relation thereto were capital losses, subject to the limitations provided for in section 117(d)(2) of the Internal Revenue Code, and could not be treated as losses incurred in trade or business, or in a transaction entered into for profit or as business bad debts. Held, further, upon the authority of George Aftergood, 21 T.C. 60, and Peter Stamos, et al., 22 T.C. #108, that the sum of $500 paid by one of petitioners in discharge of his liability as endorser of a note of said corporation must be treated as a nonbusiness bad debt and not as a loss incurred in a transaction entered into for profit. Francis A. O'Brien, Esq., 19 W. Main Street, Rochester, N. Y., for the petitioners. Paul D. Lagomarcino, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: Respondent determined deficiencies for the years 1949 and *104 1950 in the respective amounts of $395.22 and $1,342.16. The deficiency for 1949 was attributable to disallowance of a net operating loss carryback from 1950, which in turn depends upon the treatment of certain deductions taken by petitioners in the latter year, giving rise to the issues before us. The questions presented to us are: (a) Was the business of manufacture of foam rubber here involved carried on by a corporation, or by one of petitioners as an individual or with another as partner or joint adventurer? (b) Are certain funds paid in by petitioner for the purposes of said business to be treated as capital contributions to said corporation, or loans to said corporation, or expenditures by one of petitioners in a business carried on by him individually or with another as partner or joint adventurer? (c) Upon the facts, is the sum of $500 paid by one of petitioners in discharge of his liability as endorser of a note of said corporation to be treated as a nonbusiness bad debt or a loss incurred in a transaction entered into for profit? Findings of Fact The case was submitted upon stipulation of facts (incorporated herein by reference) and oral testimony. Petitioners *105 are husband and wife, and resided at all times here material in Rochester, New York. They filed joint Federal income tax returns for the taxable years 1949 and 1950 with the collector of internal revenue for the twenty-eighth district of New York, Buffalo, New York. Max Greenhouse is hereinafter referred to as petitioner. He has been a certified public accountant for about thirty years, including all periods here material. Petitioner became interested in the manufacture of foam rubber in 1946 after discussions with Marvin Jacoby, a chemist, distantly related to him by marriage. Petitioner decided to organize such a business. He was not in a position to finance it alone. He discussed the prospects with Lawrence J. Wagner who agreed to join him in financing the undertaking on an equal basis. Petitioner was to do the work required in directing and supervising the activities of the business, including promotion. It was understood that Wagner, while associating himself with petitioner for the purpose of financing the undertaking, was not to be called upon for the performance of any time-consuming duties. Full supervisory responsibilities devolved upon petitioner. A corporation known *106 as Marmax Associates, Inc., was formed on October 9, 1946, to carry on the business. Wagner, the petitioner, and Jacoby, became, respectively, President, Treasurer and Secretary of the corporation. The corporation had no paid-in capital designated as such. Funds were paid in for the purposes of the business by petitioner and Wagner as need therefor arose. A few payments were made prior to incorporation but most of them (including the larger amounts) were made after incorporation. The corporation issued no promissory notes or other evidence of indebtedness to petitioner for the funds paid in by him, and no arrangements were made or dates fixed for repayment. No interest was paid or credited in relation thereto. No action was taken by the corporation to authorize borrowing from petitioner. Significant amounts were paid in by petitioner for use in the purchase of assets having a substantial useful life such as a centrifuge, a vulcanizer and a mixer. The business organized by petitioner and Wagner was carried on by the corporation from the time of its incorporation, and not by the petitioner as an individual or joint adventurer with Wagner. The corporation was held out by petitioner *107 in dealings with third persons as a valid and active corporation. It filed annual Federal income tax returns for periods beginning with the fiscal year ended August 31, 1947, and continuing through the fiscal year ended August 31, 1950, petitioner being, in each instance, the sole or one of the signatories on behalf of the corporation. The returns showed that petitioner was Treasurer of the corporation and showed a liability for capital stock on the balance sheets filed with the returns. Federal information forms were filed by the corporation for the fiscal years ending in 1948, 1949 and 1950. It paid social security taxes, New York State Franchise Taxes, New York State Disability Benefits Insurance, and like items. The corporation both instituted an action and defended an action in its own name. The corporation kept records, accounts and payroll records. It opened a bank account and issued checks. It was listed with Dun and Bradstreet. It had and used a corporate seal. It paid for various services out of its own funds. As of June 23, 1950, the corporation (describing itself as such) executed an assignment for the benefit of creditors, and petitioner was one of those who executed *108 the assignment on its behalf. Petitioner filed a claim in the proceedings for $13,185, and asserted that the consideration was for money loaned. In his affidavit, he described himself as Treasurer of the corporation. In 1947, petitioner and Wagner borrowed money from a bank for and in the name of the corporation, and both of them endorsed the note. On October 27, 1950, petitioner paid $500 to the bank by reason of said note. Petitioner was not in the business of lending money to or financing corporations. We find as an ultimate fact that the funds from time to time paid in or advanced by petitioner to be used in the business were intended to be, and were contributions to capital and not loans. Opinion Petitioner paid in or "advanced" to the enterprise described in our Findings sums of money totalling $12,685, in addition to which he was required to pay $500 to the bank as endorser on a note of Marmax Associates, Inc.
We will first consider the issues relating to the payments totalling $12,685. Petitioner contends in his brief that he is entitled to the deduction of this amount either as a loss incurred in trade or business under section 23(e)(1) or as a loss incurred in *109 a transaction entered into for profit under section 23(e)(2). In taking this position, petitioner argues that he himself carried on the business either individually or as "co-promoter" with Wagner. He admits that a corporation was formed, and adds, in his brief: "It is freely conceded that after formation, the corporate name and entity was used in all relations with third parties:" * * * [Italics supplied.] He attempts to avoid the consequences of the foregoing concession by the following statement, also in his brief: "However, in relation to the taxpayer, the corporation was a mere shell and an incomplete formation held intentionally so, in order to carry out the basic purpose and undertaking." We accept the concession, but must disagree with the avoidance. The record demonstrates beyond question that Marmax Associates, Inc., was a corporation in fact and in law; that from the approximate date of incorporation, the enterprise was its enterprise, and not that of the petitioner and his co-promoter; that it operated the enterprise as a corporate operation; and that while petitioner was no doubt the dominating personality in directing the affairs of the corporation, his activities *110 were that of an officer and executive of the corporation, and not as an individual carrying on either his own business or that of a partnership or joint venture. Our Findings of Fact summarize details of the corporation's activities and it is unnecessary to repeat them here. We think it appropriate to re-emphasize, however, that in 1950, the corporation made an assignment for the benefit of creditors, and petitioner filed under oath a claim in the proceedings for the identical items here involved, asserting: "V - That the consideration of said debt is as follows: For moneys loaned to the corporation as per statement annexed." Whether or not the money was loaned, or was a contribution to capital, will be considered infra, but it is clear from petitioner's actions that he fully realized (a) that the business was being carried on by the corporation and (b) that his money had been paid into the corporation as such. The record in the case leaves no doubt that the losses resulting from carrying on the enterprise were those of the corporation, and that petitioner's rights from an income tax standpoint must be founded upon provisions of the law other than section 23(e)(1) or (2). *111 Petitioner contended in his original petition that the amounts totalling $12,685 represent loans to the corporation deductible by him in 1950 as business bad debts. We hold, under the circumstances hereinafter set forth, that the amounts in question were contributions to capital, and we agree with respondent's position that the loss sustained was a long-term capital loss subject to the limitations provided for in section 117(d)(2). Since the factors which cause us to reject petitioner's contention and affirm that of respondent are interrelated, we consider them together. The issue is essentially one of fact, and upon the record before us, all of the material facts lead to the conclusion that the payments were contributions to capital. Had it not been for the amounts paid into the corporation by petitioner and corresponding amounts by Wagner, the corporation would have been without capital. The payments were made when needed by the corporation for its business purposes. No promissory notes or other evidences of indebtedness were issued by the corporation. No arrangements were made or dates fixed for repayment. No interest was paid or credited. No action was taken to authorize borrowing. *112 One of petitioner's functions was to see that the enterprise was financed, and it was in this connection that he brought Wagner into the picture. No mortgage, or other security was taken by petitioner. Substantial parts of the money were used to acquire assets which were placed at the risk of the business. While petitioner filed a claim in the insolvency proceedings growing out of the assignment for the benefit of creditors alleging that the money was loaned, the question of whether or not it was actually loaned, or was a capital contribution, must be decided upon the record in this case and not upon petitioner's assertions made in his own interest under other circumstances. Since respondent determined in his statutory notice of deficiency that the loss in question was a long-term capital loss (obviously on the theory that the payments were capital contributions) the burden of proof was upon petitioner. It is our view that not only has he failed to establish either of his alternative contentions, but that the record affirmatively supports the contention of respondent. We come now to the issue relating to the amount of $500 paid by petitioner in 1950 in discharge of his liability *113 as endorser on a note of Marmax Associates, Inc., executed in 1947 for the purpose of borrowing money from the bank. Petitioner contends that he is entitled to deduct the $500 as a loss incurred in a transaction entered into for profit, and cites as authority Fox v. Commissioner, (C.A. 2) 190 Fed. (2d) 101, reversing 14 T.C. 1160. There is much to be said for petitioner's position, at least as a practical matter. There are, however, distinguishing facts. In the Fox case, supra, the taxpayer was called upon to make payment on her guaranty of her husband's debts. The guaranty had originally been entered into to protect herself from loss on securities which she had already permitted her husband to pledge. At the time she made her ultimate payment, her husband was dead and his insolvent estate had been closed for several years. Under the circumstances, the Court held that it could not be said that a debt had arisen from her husband's estate by way of subrogation, and held that she was entitled to a deduction on the basis of a loss arising out of a transaction entered into for profit. The Court, however, was careful to note the limits of the application of *114 its decision, and said, inter alia (p. 105): "And it does no violence to the theory that a debt might arise upon payment by a guarantor where the principal debtor remains still in existence." In the case before us, there is no evidence that Marmax Associates, Inc., had been dissolved on October 27, 1950 (the date petitioner paid the $500), and it affirmatively appears that petitioner filed a claim in the insolvency proceedings growing out of the assignment for the benefit of creditors which claim included the $500 item in question. The claim was supported by affidavit dated February 21, 1951. Under the circumstances, and even though it is clear that respondent regarded any claim against Marmax Associates, Inc., as worthless in October 1950, we feel bound to hold upon the authority of George After-good, 21 T.C. 60 and Peter Stamos, et al., 22 T.C. #108, that petitioner's payment of $500 and consequent loss arising from his endorsement of the note constituted a nonbusiness bad debt within the meaning of section 23(k)(4) of the Internal Revenue Code. Decision will be entered for the respondent.