OPINION. Black, Judge: In determining their community income for 1948, McBride and his wife, Janet, deducted $24,064.10 as a bad debt due from McBride Oil Company. It is clear from the evidence, however, that the debt due McBride at the close of 1948 was no greater than $8,681.60, • which was the final balance for the 1948 calendar year recorded as due him on the Oil Company’s accounts payable ledger. McBride and Janet included an additional $2,535.50 in the claimed deduction, but the accounts payable ledger reveals that that sum was not advanced by McBride to the Oil Company until 1949. They also included in the claimed deduction $12,847 of the liability shown as due McBride Refining Company on the Oil Company’s March 31, 1950, balance sheet, asserting that McBride was personally liable to repay that sum to the Refining Company. It is first noted that the record by no means clearly establishes that the Refining Company loaned the $12,847 to the Oil Company before the close of 1948. Even if we assume, however, that the Refining Company loaned the Oil Company $12,847 in 1948, McBride and Janet could not take a deduction for that sum since McBride had not in fact repaid it to the Refining Company before the end of 1948 and no debt runs to the guarantor (McBride) from the principal debtor (Oil Company) until the guarantor makes payment on the guaranty. Kate Baker Sherman, 18 T. C. 746, 751; George Aftergood, 21 T. C. 60; Peter Stamos, 22 T. C. 885. Consequently, the only sum we have here to consider is the $8,681.60. Respondent contends that the advances made by McBride to the Oil Company were not loans, but capital contributions. This is a question of fact as to the true intent of the parties, and our determination must be based upon consideration of the entire record. Sam Schnitzer, 13 T. C. 43, affirmed per curiam (C. A. 9) 183 F. 2d 70, certiorari denied 340 U. S. 911. The Oil Company was capitalized at $30,000, which represented the estimated value of the oil leases held. That this capitalization was honestly arrived at seems clear from the fact that McBride, just prior to the company’s incorporation, had paid $10,000 for a 25 per cent interest in those leases. The company’s debts at the close of its first fiscal year, October 31, 1948, totaled $35,691.79, just slightly in excess of its capitalization. We think that the appraisal of the company’s prospects were bona fide, though erroneous, and that its total debt structure was not unreasonable compared to its capitalization as based upon that appraisal. As for the advances made by McBride personally, the balance thereof never, except for one short period, exceeded $10,290.48 (as of October 31, 1948) and was reduced to $8,681.60 by the close of 1948. At the beginning of 1948, the company did owe McBride $22,500, but $15,000 thereof represented funds McBride had borrowed from a bank on his note dated December 5, 1947, which note was replaced on January 2, 1948, by that of the Oil Company. McBride was only a minority stockholder in the Oil Company, his interest being 25 per cent, and was not entitled to- any greater share of profits as a result of his advances. It appears that his financing function was not primarily to personally lend money to the Oil Company but to obtain funds from banks. The fact that he was a guarantor of some of those bank loans is irrelevant under the circumstances of this case. We conclude, after considering the above and other facts of record, that the $8,681.60 represented the balance of advances which were intended by McBride, and understood by the Oil Company, to be not capital contributions but loans. On this phase of the issue we hold for petitioners. Respondent next contends that McBride is not entitled to either a business or nonbusiness bad debt deduction [2] in 1948 because the debt due him by the Oil Company (which we have heretofore determined to be $8,681.60) did not become worthless in that year. This is a question of fact, the burden of proving which rests upon petitioner. Redman v. Commissioner, (C. A. 1) 155 F. 2d 319. The Oil Company’s balance sheets as of October 31,1948 and 1949, show a surplus deficit of over $19,000. But the fact that its capital was impaired is of no controlling significance and a bad debt deduction is not allowable if its assets exceeded its liabilities exclusive of proprietorship. Earl V. Perry, 22 T. C. 968. Those balance sheets, although evidentiary only, indicate that assets were in excess of liabilities on the indicated dates. McBride maintains, however, that the Oil Company’s leases were worthless at the close of 1948, and that the company’s pipe inventory was of a value less than the amount stated on the October 31, 1948, balance sheet. Although the oil leases may not have been worth the $30,230.36 value assigned them on the 1948 and 1949 balance sheets, we certainly do not regard them as being worthless at the close of 1948 in view of the fact that some wells drilled thereon were still producing at the time of the hearing of this case in 1954. But even if they were worthless at the close of 1948, and the pipe inventory was of a lesser value than reported, there were still assets available from which the company’s debts could be satisfied, at least in part. Other facts also indicate that the company’s debt to McBride was not totally worthless at the close of 1948, to wit: McBride advanced the Oil Company an additional $2,535.50 on October 31, 1949, New York Water Service Corporation, 12 T. C. 780, 792; the October 31, 1949, balance sheet indicates that an unrelated third party, the Cen-Tex Supply Company apparently advanced the company $1,335.53 in 1949; the company remained in business until March 31, 1950, and its deficit was slightly lower on that date and on October 31,' 1949, than on October 31, 1948. These circumstances are all inconsistent with an allegation of total worthlessness in 1948. We conclude that, determined by objective standards, the Oil Company’s debt to McBride was not actually worthless at the close of 1948, Earl V. Perry, supra, and that McBride and Janet are not entitled to deductions therefor in that year. In view of this holding, it is unnecessary for us to consider whether the debt was a business or nonbusiness debt. Uncontested adjustments by respondent in the returns of petitioners in each of the dockets before us require Rule 50 computations. Decisions will T>e entered under Bule 50. See. 23 (k) (1), (4), I. R. C., 1939.