Elwin L. Suman and Doris M. Suman v. Commissioner.
Suman v. Commissioner
Docket No. 657-66.
United States Tax Court
T.C. Memo 1967-84; 1967 Tax Ct. Memo LEXIS 174; 26 T.C.M. (CCH) 420; T.C.M. (RIA) 67084; April 21, 1967
Elwin L. Suman, pro se, P.O. Box 2, Sierra Madre, Calif. James A. Thomas, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined a deficiency in petitioners' income tax for the year 1962 in the amount of $502.60 by disallowing a claimed nonbusiness bad debt deduction of $2,956.42. This claimed bad debt was composed of 11 promissory notes bearing various dates, commencing with December 1, 1947, and ending with August 10, 1958. Petitioners have now conceded that the note dated December 1, 1947, in the face amount of $150 was improperly deducted by them. There was *175 no pre-trial stipulation in this case. Findings of Fact Petitioners reside in Sierra Madre, California, and filed their joint income tax return for the calendar year 1962 with the district director of internal revenue at Los Angeles, California. Doris M. Suman is a petitioner only by reason of having filed jointly with Elwin L. Suman, who will hereinafter be referred to as petitioner. Petitioner's son, Michael C. Suman, was born March 14, 1930. By 1953 Michael C. Suman, hereinafter called Michael, was married, living apart from his parents and he has continued to maintain his separate residence throughout the times involved herein. Commencing on March 30, 1953, and ending on August 10, 1958, petitioner took 10 unsecured, demand promissory notes from Michael, all bearing six percent interest and totaling $2,806.42, handing Michael the specified amounts of cash in return. No payments of either principal or interest have ever been made on these notes. In the early 1950's Michael was in the armed services. In about 1953 he was employed in the photography department at the Walt Disney Company in Burbank, California, and commencing in about 1954 he was employed as a laboratory *176 assistant at the California School of Technology which employment continued for about three years. During 1962 Michael was continuing his studies and was also employed as an instructor at Los Angeles State College. [1] By about 1964 Michael had earned an engineering degree and was employed as an engineer by the Autonetics Company which employment was continuing at the time of trial. The record is entirely silent as to Michael's salary or remuneration or financial gain at any time. In 1960 petitioner purchased two residential properties [2] in Alhambra, California, taking title in the joint names of himself and his son, Michael, under an arrangement and agreement with him that Michael would manage and oversee the operation of these rental properties in return for his half interest. At some time between 1960 and 1964 Michael apparently acquired sole title to these properties and in 1964 he sold them. The record is silent as to the purchase price, the sale price, or the value of these properties in 1962 or at any other time. *177 During 1962 Michael and petitioner held title jointly to the home in which Michael and his family lived. The record reveals only (petitioner's testimony) that this was "another mutual venture [similar to that concerning the two homes and the cottage discussed above], under which he [Michael] owned a half of a home." No details as to the purchase price or value at any time are given. No demands for payment of either principal or interest on any of the 10 notes remaining in issue have ever been made upon Michael nor has any action to effect collection ever been taken nor has Michael ever made any payment of any kind. Opinion Petitioner contends that the transactions between him and Michael amounted to bona fide loans which became worthless within the taxable year 1962 on the running of the four-year California statute of limitations [3] entitling him to a nonbusiness bad debt deduction under section 166(d)(1)(B). [4]
Petitioner's position is constant as to *178 all 10 of the notes remaining in issue even though six of them were made prior to 1958 (the earliest having been made in 1953) and consequently, the statute had run on these six prior to 1962. However, this fact does not change the result which we reach in this case since the complete absence of any collection efforts on petitioner's part results in utter failure of his required proof that the "debt [became] worthless within the taxable year." Respondent urges that the facts of the instant case show conclusively that the advances to Michael were gifts so that a bona fide debtor-creditor relationship never existed between petitioner and Michael and, in the alternative, that petitioner has not established that such debts (assuming that they were debts) became worthless in 1962. We find it unnecessary to decide whether the transactions in question created bona fide debts because of petitioner's complete failure to prove worthlessness in 1962. The record indicates that Michael was gainfully employed, but is silent as to his salary or other remuneration. No demand or request for repayment of any kind was ever made. We do not know the extent of Michael's properties but the record does *179 show that he owned a half interest in his home and at least a half interest in two other residence properties and possibly in a cottage. Michael was not called as a witness yet there was no showing that he was unavailable. Petitioner's position that the running of the statute of limitations alone is sufficient to establish worthlessness within the intendment of the statute is directly contrary to all of the cases our research has revealed. As was said in Watson v. Fahs, 120 F. Supp. 424, 427 (S.D. Fla. 1954): The availability of such a defense to a debtor is not a sufficient ascertainment of worthlessness to justify a charge off of a note or other debt; the running of the statute of limitations does not extinguish a debt or render it worthless, but merely provides the debtor with an affirmative defense which may be pleaded in an action instituted against him for the collection of a debt. Bank of United States v. Donnally, 8 Pet. 361, 8 L. Ed. 974; Cross v. Commissioner of Internal Revenue, 20 B.T.A. 929, affirmed 9 Cir., 54 F. 2d 781; Commissioner of Internal Revenue v. Burdette, 9 Cir., 69 F. 2d 410, 411; Spratt v. Commissioner of Internal Revenue, 43 B.T.A. 503; *180 Leo Stein, 4 B.T.A. 1016; W. S. Mitchell Co. v. Commissioner of Internal Revenue, 27 B.T.A. 645, 648. See also Charles N. Spratt, [5]43 B.T.A. 503, where the Board said at p. 513: A taxpayer must exhaust all the usual and reasonable means of collecting a debt before there can be an ascertainment of worthlessness. [Taxpayer's collection efforts were minimal.] * * * The only change in the situation in 1935 appears to have been the running of the statute of limitations. This Board has repeatedly held that the availability of such a defense to a debtor is not a sufficient ascertainment of worthlessness to justify a chargeoff of a note or other debt. [Citing cases] * * * The only difference between Charles N. Spratt and the instant case is that in Spratt some minimal efforts at collection were made while in the instant case there were none. *181 Decision will be entered for the respondent. Footnotes
1. The record seems to indicate that "Los Angeles State College" is the University of California at Los Angeles.↩
2. or three residential properties. At one point in his testimony petitioner has identified these properties as "two homes and a cottage."↩
3. The parties are agreed that such four-year statute of limitations is applicable and that it starts running instanter on the making of a demand note. ↩
4. All references are to the Internal Revenue Code of 1954.↩
5. Decided under sec. 23(k) of the Revenue Act of 1934 which allowed as deductions "debts ascertained to be worthless * * *, which language became "debt which becomes worthless" and "debt becomes worthless" under sec. 166 of the I.R.C. 1954↩. This change does not alter the meaning of the section when applied to the facts of the instant case.